196 S.W.3d 289 (2006)
In the Interest of J.P.H. and S.P.H., Children.
No. 11-05-00242-CV.
Court of Appeals of Texas, Eastland.
May 18, 2006.
*291 Coral L. Moore, Moore & Moore, Mineral Wells, for appellant.
Kenneth N. Tarlton, Robert F. Watson, Mineral Wells, Mike A. Smiddy, County Judge, Palo Pinto, for appellee.
Panel consists of: WRIGHT, C.J., and McCALL, J., and STRANGE, J.

OPINION
RICK STRANGE, Justice.
This is an involuntary termination of parental rights action under TEX. FAM.CODE ANN. ch. 161 (Vernon 2002 & Supp.2005). The trial court terminated the parent-child relationship between appellant, Crystal Goodnough, and her children, J.P.H. and S.P.H. We affirm.

Background Facts
Goodnough gave birth to twins, J.P.H. and S.P.H., in July 2002. Shortly after their birth, Child Protective Services started an investigation based upon allegations of neglect. CPS took the children to the hospital at fourteen days of age for testing and investigation of possible dehydration. Goodnough and her common-law husband, Mark Alan Hennington, agreed to voluntarily place the children with his aunt, Kim Gopffarth. When the children were released from the hospital, they were placed in her care. The trial court named Gopffarth sole managing conservator of the children and Goodnough possessory conservator.
Goodnough and Hennington faced criminal charges for organized criminal activity at the time of the twins' placement with Gopffarth in 2002. They were ultimately convicted and placed on community supervision. They failed to comply with their community supervision requirements and were arrested in January 2004. Goodnough admitted that she had failed to perform community service as ordered and had consumed amphetamines and methamphetamine. The trial court revoked Goodnough's and Hennington's community supervision and sentenced each to a term of ten years in the Institutional Division of the Texas Department of Criminal Justice.
Gopffarth then filed suit seeking to terminate Goodnough's and Hennington's[1] *292 parental rights. Gopffarth and her husband also sought to adopt the twins.
The trial court conducted a bench trial and found that Goodnough and Hennington knowingly engaged in criminal conduct that resulted in their convictions, their incarcerations, and their inability to care for the children for not less than two years from the date the petition to terminate was filed. The trial court also found that termination of the parent-child relationship was in the children's best interest. The trial court terminated the parent-child relationship and granted the Gopffarths' request to adopt the children. Both Goodnough and Hennington filed notices of appeal. Only Goodnough filed a brief. Counsel advised the court that Hennington has decided not to pursue an appeal. We also affirm the judgment as to him.

Issues
Goodnough challenges the trial court's judgment with three issues. First, she contends there was no evidence to support the trial court's finding that she was knowingly convicted of an offense resulting in her incarceration and inability to care for the children for a period of two years or more after the filing of the petition.[2] Second, she alleges that the Gopffarths failed to comply with TEX. FAM.CODE ANN. § 160.422 (Vernon 2002). Third, she contends that she was denied due process because the same judge who granted termination of her parental rights also presided over her criminal proceedings.

Standard of Review
Texas courts have long recognized that the natural right existing between a parent and child is of "constitutional dimensions." Wiley v. Spratlan, 543 S.W.2d 349, 352 (Tex.1976). There is a strong presumption that the best interest of a child is served by keeping the child with the natural parent. In re G.M., 596 S.W.2d 846 (Tex.1980). Thus, involuntary termination proceedings and statutes are strictly scrutinized in favor of the parent. Holick v. Smith, 685 S.W.2d 18, 20-21 (Tex.1985).
Due process requires that the grounds for termination be established by clear and convincing evidence. This requires that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. TEX. FAM.CODE ANN. § 101.007 (Vernon 2002); Transp. Ins. Co. v. Moriel, 879 S.W.2d 10, 31 (Tex.1994).
When conducting a legal sufficiency review, we review the entire record in the light most favorable to the finding and determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. City of Keller v. Wilson, 168 S.W.3d 802, 817 (Tex.2005); In re J.F.C., 96 S.W.3d 256, 266 (Tex.2002). We must assume that the fact-finder resolved disputed facts in favor of its finding. Phillips v. Texas Dep't of Protective and Regulatory Servs., 149 S.W.3d 814, 817 (Tex.App.-Eastland 2004, no pet.). We must also disregard all evidence that a reasonable fact-finder could have disbelieved or found incredible, but we cannot disregard undisputed facts. In re J.F.C., 96 S.W.3d at 266.
When conducting a factual sufficiency review, we review the entire record, including evidence in support of and contrary to the judgment, and give due consideration to evidence the trial court could have found to be clear and convincing. In *293 re C.H., 89 S.W.3d 17, 25 (Tex.2002). We then determine whether the evidence is such that a fact-finder could reasonably form a firm belief or conviction about the truth of the State's allegations. Id. We also consider whether any disputed evidence is such that a reasonable fact-finder could not have resolved that evidence in favor of its finding. In re J.F.C., 96 S.W.3d at 266.

Grounds For Termination
To terminate parental rights, the proponent must prove by clear and convincing evidence that a parent committed one or more of the acts or omissions set out in TEX. FAM.CODE ANN. § 161.001(1) (Vernon Supp.2005) and that termination of parental rights is in the child's best interest. Richardson v. Green, 677 S.W.2d 497, 499 (Tex.1984). However, Goodnough does not challenge the trial court's best interest finding, but focuses instead on the trial court's finding that the Gopffarths proved the statutorily-required predicate act.
Section 161.001 provides in relevant part:
The court may order termination of the parent-child relationship if the court finds by clear and convincing evidence:
(1) that the parent has:
....
(Q) knowingly engaged in criminal conduct that has resulted in the parent's:
(i) conviction of an offense; and
(ii) confinement or imprisonment and inability to care for the child for not less than two years from the date of filing the petition.
.... and
(2) that termination is in the best interest of the child.
The Texas Supreme Court considered subsection Q in In re A.V., 113 S.W.3d 355 (Tex.2003). The precise question before the court was whether the two-year requirement was measured prospectively or retrospectively from the date of the filing of the petition for termination. The court held that the period is measured prospectively based upon the statute's language and purpose. Id. at 360. The court's analysis of subsection Q's purpose is instructive.
The court noted that subsection Q is a preventative measure which allows the State to act in anticipation of a parent's abandonment of the child and not just in response to it. Id. The court concluded that, "if the parent is convicted and sentenced to serve at least two years and will be unable to provide for his or her child during that time, the State may use subsection Q to ensure that the child will not be neglected." Id. The court also noted that the statute's purpose was not to punish parents for their conduct but to protect the child's best interest. Id. at 361. In re A. V. involved termination proceedings instituted by the State. This proceeding was instituted by the Gopffarths. That distinction does not alter the statute's preventative purpose because the ultimate concern is that children be protected.
Goodnough argues that subsection Q requires a finding based upon clear and convincing evidence that the parent will be incarcerated for at least two years and that merely because she received a ten-year sentence is no evidence that she will actually be incarcerated for two years. Goodnough reasons that her ten-year sentence merely reflects the maximum term she might serve. Goodnough points to Hennington's testimony that he expected to be out of prison in less than a year from the date of trial, which if true would be less than two years from the date the *294 petition for termination was filed.[3] Goodnough notes that both she and Hennington had an intimate working knowledge of the parole system and its effect on them personally and that this testimony was uncontradicted. She contends that the Gopffarths were required to rebut it with testimony from a parole officer, prison official, or the like and that their failure to do so requires that we reverse and render judgment in her favor.
First, Hennington's testimony was not as clear as Goodnough suggests. When asked when he might get out of prison, he testified that his "short wave date" is 2008. He explained this was calculated using time served and good time. We assume that this is his projected release date. He also testified that he would probably make parole before then and that there was a possibility he could be out within a year.
Second, Hennington's release date is immaterial. The issue is Goodnough's incarceration. Goodnough testified that she expects to be out before the end of her ten-year sentence, but she did not know when. This date is problematic because she acknowledged that she does not have a clean record in prison and has gotten into further trouble while there.
Third, even if we consider Hennington's testimony, the fact-finder is the exclusive judge of the witnesses' credibility. Even under a heightened standard of review, we must assume that the trial court resolved evidentiary conflicts in favor of its judgment if it reasonably could have done so. In re J.F.C., 96 S.W.3d at 266. Hennington undoubtedly is familiar with the parole system, but the trial court could still reasonably disregard Hennington's release estimate.
Imprisonment alone is insufficient to justify termination of the parent-child relationship. Tex. Dep't of Human Servs. v. Boyd, 727 S.W.2d 531, 533 (Tex.1987). Subsection Q recognizes this by requiring both a two-year incarceration and proof of the parent's inability to care for the child while incarcerated. At the same time, the statute provides for the child's best interest by allowing proactive action. A lengthy sentence is a serious matter and requires that measures be taken to ensure the child's care. Goodnough's ten-year sentence creates at least a rebuttable presumption sufficient to satisfy subsection Q's incarceration requirement.
We recognize that a ten-year sentence is not synonymous with a ten-year period of incarceration. Subsection Q affords parents the opportunity to rebut its application. See Hampton v. Tex. Dep't of Protective and Regulatory Servs., 138 S.W.3d 564, 567 (Tex.App.-El Paso 2004, no pet.); In re Caballero, 53 S.W.3d 391, 396 (Tex. App.-Amarillo 2001, pet. denied). While these cases concerned the parent's ability to provide care while in prison, a similar situation is presented by the length of a parent's sentence. A ten-year sentence satisfies subsection Q because it raises the need to take proactive measures to ensure the child's welfare. If a parent wishes to challenge the statute's applicability, then the parent must produce evidence that he or she will be out of prison less than two years after the filing of the petition of termination. Hennington's estimate of when he might be paroled is no evidence of when Goodnough would be released. Nor is her testimony that she did not expect to serve her full ten-year sentence evidence that she would be incarcerated less than two years from the date of the petition. *295 We find that the evidence is legally and factually sufficient to support the trial court's finding that Goodnough would be incarcerated at least two years from the date of the petition.
Subsection Q requires not only a period of incarceration of two years but also that the parent be unable to provide care for the child while incarcerated. Goodnough does not challenge the trial court's finding that she would be unable to provide care for the children while in prison. Subsection Q was satisfied; and, therefore, Goodnough's first issue is overruled.

Section 160.422
Goodnough contends in her second issue that the Gopffarths failed to comply with TEX. FAM.CODE ANN. § 160.422 (Vernon 2002). This statute requires a search of the registry of paternity before a proceeding for the termination of parental rights is concluded. The statute's purpose is to provide a potential father the opportunity to protect his rights by receiving notice before termination or adoption. Goodnough lacks standing to raise a challenge under this statute. She argues that, where the rights of an appealing party and a non-appealing party are inseparable and dependent upon each other, the appellate court must reverse the entire judgment to give an appellant an effective remedy. This principle applies only if reversible error is otherwise shown. It does not operate to provide the mother standing when no other error is present. Moreover, the statute does not apply to this case. Hennington admitted that he was the father and acknowledged that his name is on the twins' birth certificates. Finally, even if Goodnough has standing, she waived this issue by not raising it before the trial court. TEX.R.APP. P. 33.1. Goodnough's second issue is overruled.

Due Process
Goodnough alleges in her third issue that her due process rights were violated because the same judge presided over both her termination case and her criminal case. Goodnough contends that, because she and Hennington both expected to be out of prison before the end of their ten-year sentence and no witness contradicted their testimony, the trial court by necessity inferred the length of their incarceration from something beyond the record.
Goodnough also argues that, while the original proceedings which resulted in Gopffarth being named managing conservator and she being placed on community supervision were in progress, the trial court could not have conditioned a ruling in her criminal case on her agreement to waive any right she might have in the civil proceeding. But she contends that, by revoking her community supervision, the trial court made available the sole basis upon which the termination was subsequently granted.
Our review of the record indicates no suggestion of improper action by the trial court. Goodnough's community supervision was revoked because, by her own admission, she failed to perform community service and consumed amphetamines and methamphetamine. Goodnough's community supervision was revoked months before the trial of this matter. She knew the judge who would preside over the termination case was the same judge who had presided over her criminal case. If she was concerned about the judge's ability to fairly and impartially consider her case, she had the opportunity to file a motion for recusal pursuant to TEX.R. CIV. P. 18a. Not only did she not object to the judge's presence, she did not ask for a jury trial. Goodnough does not allege the judge was constitutionally disqualified *296 to serve. Consequently, she has waived any complaint. In re Union Pac. Res. Co., 969 S.W.2d 427, 428 (Tex.1998). Goodnough's third issue is overruled.

Holding
The trial court's judgment is affirmed.
NOTES
[1] Goodnough and Hennington have an older daughter who lives with Goodnough's parents in California and who is not involved in this proceeding.
[2] We will treat Goodnough's alternative contention that there was no clear and convincing evidence as a factual insufficiency challenge.
[3] The trial was held on March 18, 2005. The Gopffarths' petition was filed on September 10, 2004.