

# IN THE
# TENTH COURT OF APPEALS

## No. 10-10-00350-CV

## IN THE INTEREST OF
## R.S., A.S., N.S., AND B.J.S., CHILDREN,

### From the County Court at Law No. 1
### Johnson County, Texas
### Trial Court No. D200900052

## MEMORANDUM  OPINION

Rebecca S., Michael W., and Billy B. appeal the trial court's judgment terminating their parental rights.  Rebecca is the mother of R.S., A.S., N.S., and B.J.S.  Michael is the father of A.S., and Billy is the father of N.S.[1]

The trial court entered an order of termination based upon a jury verdict.  The jury charge set out three grounds for terminating Rebecca's parental rights to all four children (1) conditions or surroundings that endanger the children, (2) conduct that endangers the children, and (3) mental or emotional illness or a mental deficiency that renders her unable to provide for the needs of the children.  TEX. FAM. CODE ANN. § 161.001 (1) (D) (E) (Vernon Supp. 2010) & TEX. FAM. CODE ANN. § 161.003 (Vernon 2008).

---

[1] The fathers of R.S. and B.J.S are not parties to this appeal.

The jury charge set out three grounds for terminating Michael's rights to A.S. (1) conditions or surroundings that endanger the child, (2) conduct that endangers the child, and (3) failure to comply with a court order establishing actions necessary for the return of the child. TEX. FAM. CODE ANN. § 161.001 (1) (D) (E) (O) (Vernon Supp. 2010). The jury charge set out three grounds for terminating Billy's parental rights to N.S. (1) conditions or surroundings that endanger the child, (2) conduct that endangers the child, and (3) mental or emotional illness or a mental deficiency that renders him unable to provide for the needs of the child. TEX. FAM. CODE ANN. § 161.001 (1) (D) (E) (Vernon Supp. 2010) & TEX. FAM. CODE ANN. § 161.003 (Vernon 2008). The jury found by clear and convincing evidence that one or more of the alleged grounds for termination was established for Rebecca, Michael, and Billy and that termination was in the best interest of the children. We affirm the trial court's order of termination.

**Background Facts**

R.S. was born in Nebraska, and the Nebraska Department of Health and Human Services became involved with Rebecca and R.S. when R.S. was three days old. The Nebraska Department was concerned that Rebecca was unable to care for R.S. Rebecca and R.S. both lived in foster care placement in Nebraska. Rebecca and R.S. later moved to Texas. Rebecca was in Texas approximately two weeks when the Department received a referral that R.S. was unsupervised. Rebecca moved, and the case was closed as unable to complete.

The Department became involved with Rebecca again after the birth of A.S., and Rebecca entered into a safety plan with the Department. R.S. was engaging in behavior

harmful to himself and to A.S. Rebecca did not complete the safety plan, and moved to Oklahoma. The Oklahoma Department reported possible neglect and abuse of R.S. and A.S. The Oklahoma Department reported contact between R.S., A.S. and Billy's mother. Billy's mother had a history of abuse and neglect with the Oklahoma Department. Rebecca went to Arkansas with R.S. and A.S. where Rebecca reported possible sexual abuse of A.S.

Rebecca returned to Texas with the children, and a new referral was reported to the Department. Rebecca entered into a safety plan with the Department in January 2006. Rebecca and the Department also entered into safety plan in August 2008 concerning R.S.'s medication, and a safety plan in September 2008 concerning insect bites on the children.

In January 2009, Rebecca left A.S. and N.S. with Billy. Billy walked with the children to a church where they get free meals. Billy went to the church for food because he said he was hungry, but there was plenty of food in the home at the time. It was 27 degrees outside and sleeting. A person driving by saw Billy and the children and was concerned. Randy Jackson testified that he stopped and offered them a ride. Jackson said N.S.'s hand was purple and felt like an "ice cube." Jackson stated that N.S. was nonresponsive and never changed his expression. He put his coat around A.S. Jackson told Billy that he needed to get help for N.S. because he was too cold. Billy shook N.S., and N.S. grunted. Billy said that N.S. was fine. Jackson testified that he thought N.S. was about to die.

Jackson went to the police station to report the incident. Jackson also went to the Department to report the incident, but the office was closed. He spent two hours on the phone seeking help for N.S., and eventually reported the incident to the Department hotline. Rebecca, Billy, and the Department entered into another safety plan that provided Billy would not be alone with the children. Rebecca and Billy began receiving services from the Department.

There was testimony that Rebecca and Billy both scored in the extremely low range on verbal IQ, and that both are low functioning. There was testimony that the mental deficiencies of Rebecca and Billy affect their ability to parent the children. There was also testimony that Rebecca and Billy would need supervision to be able to care for their children, and without supervision there would be a risk to the children.

**Standard of Review**

Rebecca, Michael, and Billy all challenge the legal and factual sufficiency of the evidence to support the predicate termination grounds and to support a finding that termination is in the best interest of the children. Due process requires that the grounds for termination be established by clear and convincing evidence. *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002). This requires a measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. TEX. FAM. CODE ANN. § 101.007 (Vernon 2008); *In re J.P.H.*, 196 S.W.3d 289, 292 (Tex. App.—Eastland 2006, no pet.). When conducting a legal sufficiency review, we review all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or

conviction that its finding was true. *City of Keller v. Wilson*, 168 S.W.3d 802, 817 (Tex. 2005); *In re J.F.C.*, 96 S.W.3d at 266. We must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so, and we disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible. *In re J.F.C.*, 96 S.W.3d at 266.

When conducting a factual sufficiency review, we review the record as a whole, including evidence in support of and contrary to the judgment, and give due consideration to evidence that the trier of fact could have found to be clear and convincing. *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002); *In re J.P.H.*, 196 S.W.3d at 292-93. We then determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations. *In re C.H.*, 89 S.W.3d at 25; *In re J.P.H.*, 196 S.W.3d at 293. We also consider whether any disputed evidence is such that a reasonable factfinder could not have resolved that evidence in favor of its finding. *In re J.F.C.*, 96 S.W.3d at 266; *In re J.P.H.*, 196 S.W.3d at 293.

**Rebecca**

Rebecca brings thirteen issues on appeal challenging the legal and factual sufficiency of the evidence to support the termination of her parental rights to each of her four children and that termination is in the best interest of the children.

The trial court may order termination of the parent-child relationship if it finds by clear and convincing evidence that the parent has knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child. TEX. FAM. CODE ANN. § 161.001(1)(D) (Vernon

Supp. 2010). Inappropriate, abusive, or unlawful conduct by persons who live in the child's home or with whom the child is compelled to associate on a regular basis in the home is a part of the conditions or surroundings of the child's home under section D. *Jordan v. Dossey*, 325 S.W.3d 700, 721 (Tex.App.—Houston [1st Dist.] 2010, pet. den'd). When termination of parental rights is based on section D, the endangerment analysis focuses on the evidence of the child's physical environment, although the environment produced by the conduct of the parents bears on the determination of whether the child's surroundings threaten his well-being. *Jordan v. Dossey*, 325 S.W.3d at 721.

It is not necessary that the parent's conduct be directed toward the child or that the child actually be injured; rather, a child is endangered when the environment creates a potential for danger which the parent is aware of but disregards. *Id*. In considering whether to terminate parental rights, the court may look at parental conduct both before and after the birth of the child. *Id.* Section D permits termination based upon only a single act or omission. *Id*.

Rebecca allowed Billy to care for the children unsupervised. Rebecca was aware of Billy's mental deficiencies. Rebecca was the payee for Billy's Social Security disability benefits because it had been determined Billy does not have the ability to care for himself or his personal finances. Rebecca, Billy, R.S., A.S., and N.S. lived with Billy's mother who has a history of abuse and neglect with the Oklahoma Department.

Rebecca allowed a person known as "Coach" to reside in the home with the children. Rebecca testified that Coach is a sex offender. He slept in close proximity to A.S., and Rebecca accused him of sexually assaulting A.S.

Rebecca and her children at times lived with her parents. Rebecca testified that her father physically abused her throughout her life. Rebecca and her father had physical altercations in front of the children, and Rebecca's father would refer to the children using racial slurs.

The Department had a safety plan in place with Rebecca stating that the children have no contact with a woman named Connie. Rebecca allowed Connie to care for N.S. and B.J.S. Connie took B.J.S on a shopping trip.

The evidence is legally and factually sufficient to support a finding of termination of Rebecca's rights to all four children under TEX. FAM. CODE ANN. § 161.001(1)(D) (Vernon Supp. 2010). We overrule issues 1, 4, 7, and 10. The Department need only prove one ground for termination listed under TEX. FAM. CODE ANN. § 161.001 (1) and that termination is in the best interest of the children. *In re A.V.*, 113 S.W.3d 355, 361 (Tex. 2003).

Best interest does not require proof of any unique set of factors. *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. den'd); *In re W.E.C.*, 110 S.W.3d 231, 240 (Tex. App.—Fort Worth 2003, no pet.). Courts may use the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). These include, but are not limited to, (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency

seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *Id*.

The record shows that Rebecca moved numerous times after the birth of R.S. Rebecca would frequently move to avoid intervention by the Department. Rebecca was unable to provide a stable living environment for the children. R.S. has medical and psychiatric problems that require stability and structure. A.S. has issues with aggression and also requires a structured living environment.

Rebecca was provided numerous services by the Department, but she was unable to consistently apply the skills learned in the classes. The Department offered evidence that future services would not improve Rebecca's parenting skills for her to be able to provide for the children. The evidence is sufficient to support a finding that termination of Rebecca's parental rights to all four children is in the best interest of the children. We overrule issues 3, 6, 9, and 12. Because the evidence is sufficient to support one ground of termination under TEX. FAM. CODE ANN. § 161.001 (1) and a finding that termination is in the best interest of the children, we need not address Rebecca's remaining issues on appeal. TEX. R. APP. P. 47.1.

## Billy

Billy argues in his first issue on appeal that the evidence is insufficient to support the jury's verdict terminating his parental rights to N.S. The jury found that Billy knowingly placed or knowingly allowed the child to remain in conditions or

surroundings which endanger the physical or emotional well-being of the child. TEX. FAM. CODE ANN. § 161.001(1)(D) (Vernon Supp. 2010).

Billy allowed N.S. to live with his mother. His mother had her own children removed from her care due to abuse and neglect. Billy also allowed Coach to reside in the home with N.S. knowing that Coach was a sex offender. Billy agreed that having a sex offender in the house was dangerous for N.S. Billy also allowed Connie to care for N.S. Billy acknowledged that Connie was a "bad" person and that the Department had removed her children from her care.

Billy walked with N.S. and A.S. to a church for food when the temperature was below freezing and sleeting. A passerby was concerned for the health of N.S. as a result of the incident and thought N.S. might die from exposure to the cold.

The record shows that Billy is mentally deficient and unable to care for his own finances. After participating in services from the Department, Billy still does not have the skills required to parent N.S. There was testimony showing concern about Billy being able to parent N.S. The jury heard evidence that termination of Billy's parental rights to N.S. is in the best interest of the child. The evidence is sufficient to support a finding of termination under TEX. FAM. CODE ANN. § 161.001(1)(D) (Vernon Supp. 2010) and a finding that termination of Billy's parental rights to N.S. is in the best interest of N.S. Again, the Department need only prove one ground of termination and that termination is in the best interest of the child. We overrule Billy's first issue on appeal.

Billy argues in his second issue on appeal that the trial court erred in failing to submit his requested jury charge. Billy requested a charge on TEX. FAM. CODE ANN. § 263.403 (Vernon 2008). Section 263.403 states that:

(a) Notwithstanding Section 263.401, the court may retain jurisdiction and not dismiss the suit or render a final order as required by that section if the court renders a temporary order that:

(1) finds that retaining jurisdiction under this section is in the best interest of the child;

(2) orders the department to return the child to the child's parent;

(3) orders the department to continue to serve as temporary managing conservator of the child; and

(4) orders the department to monitor the child's placement to ensure that the child is in a safe environment.

(b) If the court renders an order under this section, the court shall:

(1) include in the order specific findings regarding the grounds for the order; and

(2) schedule a new date, not later than the 180th day after the date the temporary order is rendered, for dismissal of the suit unless a trial on the merits has commenced.

(c) If a child placed with a parent under this section must be moved from that home by the department before the dismissal of the suit or the commencement of the trial on the merits, the court shall, at the time of the move, schedule a new date for dismissal of the suit unless a trial on the merits has commenced. The new dismissal date may not be later than the original dismissal date established under Section 263.401 or the 180th day after the date the child is moved under this subsection, whichever date is later.

(d) If the court renders an order under this section, the court must include in the order specific findings regarding the grounds for the order.

We review a trial court's decision to submit or refuse a particular jury instruction under an abuse of discretion standard. *Shupe v. Lingafelter*, 192 S.W.3d 577, 579 (Tex. 2006). To be proper, an instruction must (1) assist the jury, (2) accurately state the law,

and (3) find support in the pleadings and the evidence. *Texas Workers' Compensation Insurance Fund v. Mandlbauer*, 34 S.W.3d 909, 912 (Tex. 2000). The omission of an instruction is reversible error only if the omission probably caused the rendition of an improper judgment. *Shupe*, 192 S.W.3d at 579.

Section 263.403 allows the trial court to retain jurisdiction and enter an order for the monitored return of the child beyond the provisions of Section 263.401. Section 263.403 is not a question for the jury to determine. The trial court did not abuse its discretion in refusing to give the requested instruction. The charge properly tracked the language of TEX. FAM. CODE ANN. § 161.001 and § 161.003. We overrule Billy's second issue on appeal.

## Michael

In four issues on appeal, Michael argues that the evidence is legally and factually insufficient to support the jury's findings on terminating his rights to A.S. The jury found that Michael knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child. TEX. FAM. CODE ANN. § 161.001(1)(D) (Vernon Supp. 2010).

Michael lives in Iowa and has never seen A.S. in person. Michael allowed A.S. to remain in the care of Rebecca. As previously discussed, Rebecca allowed A.S. to have contact with numerous persons who had a history of neglect and abuse of children. A sex offender lived in the home and slept in close proximity to A.S. Rebecca left A.S. in the care of Billy, who is mentally deficient and took her out in freezing temperatures and sleet.

Rebecca testified that she spoke with Michael daily by telephone. Rebecca testified that Michael knew of the Department's involvement with A.S. Rebecca further testified that she told Michael every time something happened to A.S. Michael called the Texas Department to discuss his concerns about Rebecca and Billy caring for A.S. The jury heard evidence that Michael knew about Rebecca's "issues."

The Department requested a home study for placement of A.S. with Michael, and the placement was denied. Michael had previously been investigated for child abuse. Michael's own references stated that it would not be in the best interest of A.S. for her to live with him. Michael has never personally seen A.S.; he has only spoken to her on the telephone.

The evidence is legally and factually sufficient to support a finding of termination under TEX. FAM. CODE ANN. § 161.001(1)(D) (Vernon Supp. 2010) and that termination is in the best interest of A.S. We overrule Michael's first and fourth issues on appeal. Because the evidence is sufficient to support one ground of termination under TEX. FAM. CODE ANN. § 161.001 (1) and a finding that termination is in the best interest of the children, we need not address Michael's second and third issues on appeal. TEX. R. APP. P. 47.1.

In his fifth issue on appeal, Michael argues that the trial court erred in refusing Billy's requested jury charge under Section 263.403. As previously discussed, the trial court did not abuse its discretion in refusing the requested charge. We overrule Michael's fifth issue on appeal.

## Conclusion

We affirm the trial court's judgment terminating Rebecca's parental rights to R.S., A.S., N.S., and B.J.S.; Billy's parental rights to N.S.; and Michael's parental rights to A.S.


AL SCOGGINS
Justice

Before Chief Justice Gray,
      Justice Davis, and
      Justice Scoggins
Affirmed
Opinion delivered and filed June 22, 2011
[CV06]