Opinion filed September
13, 2012

 

 

 

                                                                       In The

                                                                              

  Eleventh
Court of Appeals

                                                                   __________

 

                                                         No. 11-12-00065-CV 

                                                    __________

 

                             IN
THE INTEREST OF M.J., A CHILD



 

                                   On
Appeal from the 318th District Court

 

                                                          Midland
County, Texas

 

                                                 Trial
Court Cause No. FM 52,314 

 



 

                                            M
E M O R A N D U M   O P I N I O N

            This
is an accelerated appeal of the trial court’s order terminating parental
rights.  We affirm.

Background

            Appellant
is the mother of M.J.[1] 
At the time of trial, M.J. was thirteen months old.  When M.J. was two weeks
old, the Texas Department of Family and Protective Services received a report
that appellant had physically abused M.J. by hitting her on her back and
bruising it.  Appellant admitted that she bruised M.J’s back by patting it
“hard” in an effort to make M.J. stop crying.  The Department removed M.J. from
appellant’s care and filed a petition seeking termination of appellant’s
parental rights to M.J. 

            Following
a bench trial, the trial court entered an order terminating appellant’s
parental rights to M.J.[2]
 In the order, the trial court found by clear and convincing evidence that
termination of appellant’s parental rights was in M.J.’s best interest and that
appellant had committed two of the grounds for termination under Section
161.001(1) of the Texas Family Code.  See Tex. Fam. Code Ann. § 161.001(1) (West Supp. 2012).  The
trial court found that appellant had violated Section 161.001(1)(D) because she
knowingly placed or knowingly allowed M.J. to remain in conditions or
surroundings that endangered the physical or emotional well-being of M.J.  The
trial court also found that appellant had violated Section 161.001(1)(E)
because she engaged in conduct or knowingly placed the child with persons who
engaged in conduct that endangered the physical or emotional well-being of the
child.  The trial court also made the findings required for termination under
Section 161.003 of the Family Code, which allows a trial court to terminate
parental rights if it finds that:

       
(1) the parent has a mental or emotional illness or a mental deficiency that
renders the parent unable to provide for the physical, emotional, and mental
needs of the child;

 

        (2) the
illness or deficiency, in all reasonable probability, proved by clear and
convincing evidence, will continue to render the parent unable to provide for
the child’s needs until the 18th birthday of the child;

 

        (3) the
department has been the temporary or sole managing conservator of the child of
the parent for at least six months preceding the date of the hearing on the
termination held in accordance with Subsection (c);

 

        (4) the
department has made reasonable efforts to return the child to the parent; and

 

      
(5) the termination is in the best interest of the child.

See Tex. Fam. Code Ann. § 161.003(a)(1)–(5)
(West 2008).




 

Issue
on Appeal

            In
her sole appellate issue, appellant contends that the evidence was legally and
factually insufficient to support the trial court’s finding that termination of
her parental rights was in the best interest of M.J.

Standards
of Review

            Due
process requires that the grounds for termination be established by clear and
convincing evidence.  In re J.F.C., 96 S.W.3d 256, 263 (Tex. 2002). 
This requires a measure or degree of proof that will produce in the mind of the
trier of fact a firm belief or conviction as to the truth of the allegations
sought to be established.  Tex. Fam. Code
Ann. § 101.007 (West 2008); In re D.O., 338 S.W.3d 29, 33 (Tex.
App.—Eastland 2011, no pet.).  When conducting a legal sufficiency review, we
review all the evidence in the light most favorable to the finding to determine
whether a reasonable trier of fact could have formed a firm belief or
conviction that its finding was true.  City of Keller v. Wilson, 168
S.W.3d 802, 817 (Tex. 2005); In re J.F.C., 96 S.W.3d at 266; In re
J.P.H., 196 S.W.3d 289, 292 (Tex. App.—Eastland 2006, no pet.).  We must
assume that the factinder resolved disputed facts in favor of its finding if a
reasonable factfinder could do so, and we disregard all evidence that a
reasonable factfinder could have disbelieved or found to have been incredible. 
In re J.F.C., 96 S.W.3d at 266.

            When
conducting a factual sufficiency review, we review the record as a whole,
including evidence in support of and contrary to the judgment, and give due
consideration to evidence that the trier of fact could have found to be clear
and convincing.  In re C.H., 89 S.W.3d 17, 25 (Tex. 2002); In re
J.P.H., 196 S.W.3d at 292–93.  We then determine whether the evidence is
such that a factfinder could reasonably form a firm belief or conviction about
the truth of the State’s allegations.  In re C.H., 89 S.W.3d at 25; In
re J.P.H., 196 S.W.3d at 293.  We also consider whether any disputed
evidence is such that a reasonable factfinder could not have resolved that
evidence in favor of its finding.  In re J.F.C., 96 S.W.3d at 266; In
re J.P.H., 196 S.W.3d at 293.

Termination
of Parental Rights

            To
terminate parental rights under Section 161.001, it must be shown by clear and
convincing evidence that the parent has committed one of the acts or omissions
listed in Section 161.001(1)(A)–(T) and that termination is in the best
interest of the child.  Section 161.001(1), (2); In re J.L., 163
S.W.3d 79, 84 (Tex. 2005); In re A.V., 113 S.W.3d 355, 362 (Tex. 2003). 
“Only one predicate finding under [S]ection 161.001(1) is necessary to support
a judgment of termination when there is also a finding that termination is in
the child’s best interest.”  In re A.V., 113 S.W.3d at 362.  

            In
this case, the trial court found that appellant violated Section 161.001(1)(D)
and (E).  Appellant has not challenged either of these findings on appeal. 
These unchallenged findings are sufficient to support termination of
appellant’s parental rights as long as termination was shown to be in M.J.’s
best interest.  In re B.K.D., 131 S.W.3d 10, 16 (Tex. App.—Fort Worth
2003, pet. denied).  

            The
trial court also found that termination of appellant’s parental rights was
appropriate under Section 161.003.  We have set forth above the elements
required for termination under Section 161.003.  Appellant has not challenged
any of the trial court’s findings under Section 161.003, other than the finding
that termination of her parental rights was in M.J.’s best interest.

Best
Interest of the Child

            In
determining the best-interest issue, the focus is on the child’s best interest,
not that of the parent.  Dupree v. Tex. Dep’t of Protective & Regulatory
Servs., 907 S.W.2d 81, 86 (Tex. App.—Dallas 1995, no writ).  With respect
to the best interest of a child, no unique set of factors need be proved.  In
re C.J.O., 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied). 
But, courts may use the non-exhaustive Holley factors to shape their
analysis.  Holley v. Adams, 544 S.W.2d 367, 371–72 (Tex. 1976).  These
include, but are not limited to, (1) the desires of the child, (2) the
emotional and physical needs of the child now and in the future, (3) the
emotional and physical danger to the child now and in the future, (4) the
parental abilities of the individuals seeking custody, (5) the programs
available to assist these individuals to promote the best interest of the
child, (6) the plans for the child by these individuals or by the agency
seeking custody, (7) the stability of the home of proposed placement, (8) the
acts or omissions of the parent that may indicate that the existing
parent-child relationship is not a proper one, and (9) any excuse for the
acts or omissions of the parent.  Id.  Additionally, evidence that
proves one or more statutory grounds for termination may also constitute
evidence illustrating that termination is in the child’s best interest.  In
re C.J.O., 325 S.W.3d at 266.  A trier of fact may measure a parent’s
future conduct by his or her past conduct and determine that it is in the
child’s best interest to terminate parental rights.  In re D.S., 333
S.W.3d 379, 384 (Tex. App.—Amarillo 2011, no pet.).

            The
Department presented four witnesses at trial: (1) Martha Mayo, a former Department
caseworker who had been assigned to this case; (2) Adrianna Mendoza, a
supervisor for the Department; (3) Teresa Valero, a licensed professional
counselor who provided counseling to appellant; and (4) E.B., who is
appellant’s sister and M.J.’s aunt.  Appellant did not testify at trial.

            The
record shows that appellant had several health problems.  Appellant was blind
in her right eye, had hearing problems in both ears, had scoliosis, had asthma,
and had a nonmalignant tumor on the right side of her head.  She also had
problems with her left arm and left hand.  She also had no sense of smell.  Appellant
was disabled and received social security disability benefits in the amount of
$674 a month.  Appellant was diagnosed as being mildly mentally retarded.

            Appellant
was married to Mark.[3]
 They had been married for about fifteen years.  Mark was incarcerated until
shortly before M.J. was born.  DNA testing showed that Mark was not M.J.’s
father.  Appellant did not know who M.J.’s father was.  Appellant provided the
Department with the names of men who she believed could be M.J.’s father.

            Appellant
told Mayo and Valero about her relationship with Mark.  Appellant described her
relationship with Mark as on-again, off-again.  Appellant said that Mark
physically and verbally abused her.  She told Valero that Mark slapped and
choked her.  Appellant said that, at one point, Mark put his hands around her
throat and told her that he was “done” with her.  Appellant told Valero that,
on one occasion, she told Mark that she would kill him if he ever hit her again
and that Mark did not hit her anymore after she threatened to kill him.

            Appellant
told Mayo that she and Mark had an “open” relationship.  Mark had a girlfriend,
and, at times, appellant lived with Mark and his girlfriend in an apartment.  Appellant
told Valero that she kept going back to the apartment because she did not have any
other place to live.  At the time of trial, appellant lived in a house with her
eighty-four-year-old grandmother, who had Alzheimer’s disease, and her
twenty-three-year-old nephew, who had cerebral palsy.

            Appellant
was unable to take care of herself.  She could not meet her own basic needs
without help from others.  Appellant could not cook or clean a house because
she had problems with her left hand and arm.  Valero testified that appellant
was “very dependent” on Mark.  At times, Mark would cook for appellant and make
sure that she bathed.

            M.J.
was removed from appellant’s care when she was two weeks old.  With respect to
the incident that led to the removal, appellant told Mayo that she was not sure
how to comfort M.J. when she cried.  Appellant said that she patted M.J. on the
back in an attempt to make her stop crying and that “the harder she hit M.J.,
the quieter M.J. got.”  Appellant told Valero that she could not get M.J. to
stop crying and that she patted M.J. “real real hard.”  Appellant also told
Valero that she did not know that “she could not pat the baby real, real
hard.”  Appellant admitted that she bruised M.J.’s back but appellant believed
that she had done the “right thing” to make M.J. stop crying.

            Appellant
acknowledged that she could not take care of M.J. by herself.  Appellant did
not know how to bathe M.J. or how to comfort M.J. when she cried.  However,
appellant said that, before M.J. was removed from her care, Mark had been teaching
her how to bathe M.J. and to change her diaper.  Appellant wanted Mark around
so that she could make sure “she did things right with [M.J.].”  Valero
testified that appellant could not take care of M.J. and could not provide for M.J.’s
needs.  Valero said that M.J. would face the danger of physical abuse if placed
in appellant’s care because appellant did not know how to take care of her.

            After
being removed from appellant’s care, M.J. was placed in a foster home.  She
remained in the foster home until July 2007.  At that time, M.J. was placed
with her maternal aunt, E.B., and E.B.’s fiancé, J.B.[4] 
E.B. and J.B. had been together for twenty years, and they had an eight-year-old
daughter who lived in their house.  E.B. and J.B. planned to get married in
2011.  They wanted to adopt M.J.  Mayo testified that M.J. was “very bonded” to
E.B. and J.B. and “extremely bonded” to their eight-year-old daughter.  E.B.
and J.B. were providing M.J. a safe and stable home environment, and they were
meeting M.J.’s physical and emotional needs.  The evidence showed that M.J. had
thrived while in their care.  E.B. testified that M.J. was walking and running
and that M.J. was happy.  Mendoza testified that adoption by E.B. and J.B. was in
M.J.’s best interest because it would provide M.J. a permanent placement in a
safe and stable home.

            Appellant
told Mendoza that E.B. had a “good home.”  However, appellant was mad at E.B.
and did not want M.J. to be placed in E.B.’s care.  Appellant was mad at E.B.
because E.B. told her that she should leave Mark to get away from his physical
abuse.

            Appellant
had forty-eight supervised visits with M.J. after M.J. was removed from her
care.  Mayo testified that M.J. cried constantly during the visits and that
M.J. had not developed a bond with appellant.  Valero and Mendoza gave similar
testimony about the visits.

            Based
on the evidence presented at trial, the trial court could have reasonably
formed a firm belief or conviction that termination of appellant’s parental
rights was in the best interest of M.J.  The evidence showed that appellant
could not take care of M.J., meet M.J.’s physical or emotional needs, or
provide M.J. a safe and stable environment.  Appellant admitted that she did
not know how to take care of M.J.  Further, the evidence showed that appellant
likely would not be able to provide M.J. a safe and stable environment or to
meet her needs in the future.  On the other hand, E.B. and J.B. had provided M.J.
a safe and stable environment and had met her needs.  M.J. had thrived
physically and emotionally while in their care.  M.J. had developed a bond with
E.B. and J.B, and they wanted to adopt her.  Thus, E.B. and J.B. planned to
provide stability to M.J. and to meet her needs in the future.  The evidence is
legally and factually sufficient to support the best interest finding.  Appellant’s
issue on appeal is overruled.

This
Court’s Ruling

            We affirm the trial
court’s order terminating appellant’s parental rights to M.J.

 

 

                                                                                                TERRY
McCALL

                                                                                                JUSTICE

 

September 13,
2012

Panel[5]
consists of: Wright, C.J.,  

McCall, J., and Hill.[6]

 









                [1]We refer to the child by her initials and to the
child’s mother as appellant to protect the child’s identity.  See TEX.
R. APP. P. 9.8(a), (b).  





                [2]In its order, the trial court also terminated the
parental rights of the following alleged fathers of M.J.:  R.N., E.P., and C.T. 
Further, the trial court also terminated the parental rights of the unknown
father, “Unknown father aka Richard last name unknown aka Dale last name
unknown.”  Neither the alleged fathers nor the unknown father has appealed from
the trial court’s termination order.         





                [3]Mark is a pseudonym for appellant’s husband.  We use
this pseudonym to protect M.J.’s identity.       





                [4]We refer to M.J.’s aunt and her fiancé by their
initials to protect M.J’s identity.    





                [5]Eric Kalenak, Justice, resigned effective September 3,
2012.  The justice position is vacant pending appointment of a successor by the
governor or until the next general election.

 





                [6]John G. Hill, Former Chief Justice, Court of Appeals, 2nd
District of Texas at Fort Worth, sitting by assignment.