**Opinion filed September 13, 2012**



In The

# Eleventh Court of Appeals

_____

## No. 11-12-00065-CV

_____

## IN THE INTEREST OF M.J., A CHILD

On Appeal from the 318th District Court

Midland County, Texas

Trial Court Cause No. FM 52,314

## M E M O R A N D U M   O P I N I O N

This is an accelerated appeal of the trial court's order terminating parental rights. We affirm.

### Background

Appellant is the mother of M.J.[1]  At the time of trial, M.J. was thirteen months old. When M.J. was two weeks old, the Texas Department of Family and Protective Services received a report that appellant had physically abused M.J. by hitting her on her back and bruising it. Appellant admitted that she bruised M.J's back by patting it "hard" in an effort to

---

[1]We refer to the child by her initials and to the child's mother as appellant to protect the child's identity. *See* TEX. R. APP. P. 9.8(a), (b).

make M.J. stop crying. The Department removed M.J. from appellant's care and filed a petition seeking termination of appellant's parental rights to M.J.

Following a bench trial, the trial court entered an order terminating appellant's parental rights to M.J.[2] In the order, the trial court found by clear and convincing evidence that termination of appellant's parental rights was in M.J.'s best interest and that appellant had committed two of the grounds for termination under Section 161.001(1) of the Texas Family Code. *See* TEX. FAM. CODE ANN. § 161.001(1) (West Supp. 2012). The trial court found that appellant had violated Section 161.001(1)(D) because she knowingly placed or knowingly allowed M.J. to remain in conditions or surroundings that endangered the physical or emotional well-being of M.J. The trial court also found that appellant had violated Section 161.001(1)(E) because she engaged in conduct or knowingly placed the child with persons who engaged in conduct that endangered the physical or emotional well-being of the child. The trial court also made the findings required for termination under Section 161.003 of the Family Code, which allows a trial court to terminate parental rights if it finds that:

> (1) the parent has a mental or emotional illness or a mental deficiency that renders the parent unable to provide for the physical, emotional, and mental needs of the child;

> (2) the illness or deficiency, in all reasonable probability, proved by clear and convincing evidence, will continue to render the parent unable to provide for the child's needs until the 18th birthday of the child;

> (3) the department has been the temporary or sole managing conservator of the child of the parent for at least six months preceding the date of the hearing on the termination held in accordance with Subsection (c);

> (4) the department has made reasonable efforts to return the child to the parent; and

> (5) the termination is in the best interest of the child.

*See* TEX. FAM. CODE ANN. § 161.003(a)(1)–(5) (West 2008).

---

[2]In its order, the trial court also terminated the parental rights of the following alleged fathers of M.J.: R.N., E.P., and C.T. Further, the trial court also terminated the parental rights of the unknown father, "Unknown father aka Richard last name unknown aka Dale last name unknown." Neither the alleged fathers nor the unknown father has appealed from the trial court's termination order.

In her sole appellate issue, appellant contends that the evidence was legally and factually insufficient to support the trial court's finding that termination of her parental rights was in the best interest of M.J.

*Standards of Review*

Due process requires that the grounds for termination be established by clear and convincing evidence. *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002). This requires a measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. TEX. FAM. CODE ANN. § 101.007 (West 2008); *In re D.O.*, 338 S.W.3d 29, 33 (Tex. App.—Eastland 2011, no pet.). When conducting a legal sufficiency review, we review all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. *City of Keller v. Wilson*, 168 S.W.3d 802, 817 (Tex. 2005); *In re J.F.C.*, 96 S.W.3d at 266; *In re J.P.H.*, 196 S.W.3d 289, 292 (Tex. App.—Eastland 2006, no pet.). We must assume that the factinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so, and we disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible. *In re J.F.C.*, 96 S.W.3d at 266.

When conducting a factual sufficiency review, we review the record as a whole, including evidence in support of and contrary to the judgment, and give due consideration to evidence that the trier of fact could have found to be clear and convincing. *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002); *In re J.P.H.*, 196 S.W.3d at 292–93. We then determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations. *In re C.H.*, 89 S.W.3d at 25; *In re J.P.H.*, 196 S.W.3d at 293. We also consider whether any disputed evidence is such that a reasonable factfinder could not have resolved that evidence in favor of its finding. *In re J.F.C.*, 96 S.W.3d at 266; *In re J.P.H.*, 196 S.W.3d at 293.

*Termination of Parental Rights*

To terminate parental rights under Section 161.001, it must be shown by clear and convincing evidence that the parent has committed one of the acts or omissions listed in Section 161.001(1)(A)–(T) and that termination is in the best interest of the child. Section 161.001(1), (2); *In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005); *In re A.V.*, 113 S.W.3d 355,

362 (Tex. 2003). "Only one predicate finding under [S]ection 161.001(1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest." *In re A.V.*, 113 S.W.3d at 362.

In this case, the trial court found that appellant violated Section 161.001(1)(D) and (E). Appellant has not challenged either of these findings on appeal. These unchallenged findings are sufficient to support termination of appellant's parental rights as long as termination was shown to be in M.J.'s best interest. *In re B.K.D.*, 131 S.W.3d 10, 16 (Tex. App.—Fort Worth 2003, pet. denied).

The trial court also found that termination of appellant's parental rights was appropriate under Section 161.003. We have set forth above the elements required for termination under Section 161.003. Appellant has not challenged any of the trial court's findings under Section 161.003, other than the finding that termination of her parental rights was in M.J.'s best interest.

*Best Interest of the Child*

In determining the best-interest issue, the focus is on the child's best interest, not that of the parent. *Dupree v. Tex. Dep't of Protective & Regulatory Servs.*, 907 S.W.2d 81, 86 (Tex. App.—Dallas 1995, no writ). With respect to the best interest of a child, no unique set of factors need be proved. *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied). But, courts may use the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include, but are not limited to, (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home of proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *Id.* Additionally, evidence that proves one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *In re C.J.O.*, 325 S.W.3d at 266. A trier of fact may measure a parent's future conduct by his or her past conduct and determine that it is in the child's best interest to terminate parental rights. *In re D.S.*, 333 S.W.3d 379, 384 (Tex. App.—Amarillo 2011, no pet.).

The Department presented four witnesses at trial: (1) Martha Mayo, a former Department caseworker who had been assigned to this case; (2) Adrianna Mendoza, a supervisor for the Department; (3) Teresa Valero, a licensed professional counselor who provided counseling to appellant; and (4) E.B., who is appellant's sister and M.J.'s aunt. Appellant did not testify at trial.

The record shows that appellant had several health problems. Appellant was blind in her right eye, had hearing problems in both ears, had scoliosis, had asthma, and had a nonmalignant tumor on the right side of her head. She also had problems with her left arm and left hand. She also had no sense of smell. Appellant was disabled and received social security disability benefits in the amount of $674 a month. Appellant was diagnosed as being mildly mentally retarded.

Appellant was married to Mark.[3] They had been married for about fifteen years. Mark was incarcerated until shortly before M.J. was born. DNA testing showed that Mark was not M.J.'s father. Appellant did not know who M.J.'s father was. Appellant provided the Department with the names of men who she believed could be M.J.'s father.

Appellant told Mayo and Valero about her relationship with Mark. Appellant described her relationship with Mark as on-again, off-again. Appellant said that Mark physically and verbally abused her. She told Valero that Mark slapped and choked her. Appellant said that, at one point, Mark put his hands around her throat and told her that he was "done" with her. Appellant told Valero that, on one occasion, she told Mark that she would kill him if he ever hit her again and that Mark did not hit her anymore after she threatened to kill him.

Appellant told Mayo that she and Mark had an "open" relationship. Mark had a girlfriend, and, at times, appellant lived with Mark and his girlfriend in an apartment. Appellant told Valero that she kept going back to the apartment because she did not have any other place to live. At the time of trial, appellant lived in a house with her eighty-four-year-old grandmother, who had Alzheimer's disease, and her twenty-three-year-old nephew, who had cerebral palsy.

Appellant was unable to take care of herself. She could not meet her own basic needs without help from others. Appellant could not cook or clean a house because she had problems with her left hand and arm. Valero testified that appellant was "very dependent" on Mark. At times, Mark would cook for appellant and make sure that she bathed.

---

[3]Mark is a pseudonym for appellant's husband. We use this pseudonym to protect M.J.'s identity.

M.J. was removed from appellant's care when she was two weeks old. With respect to the incident that led to the removal, appellant told Mayo that she was not sure how to comfort M.J. when she cried. Appellant said that she patted M.J. on the back in an attempt to make her stop crying and that "the harder she hit M.J., the quieter M.J. got." Appellant told Valero that she could not get M.J. to stop crying and that she patted M.J. "real real hard." Appellant also told Valero that she did not know that "she could not pat the baby real, real hard." Appellant admitted that she bruised M.J.'s back but appellant believed that she had done the "right thing" to make M.J. stop crying.

Appellant acknowledged that she could not take care of M.J. by herself. Appellant did not know how to bathe M.J. or how to comfort M.J. when she cried. However, appellant said that, before M.J. was removed from her care, Mark had been teaching her how to bathe M.J. and to change her diaper. Appellant wanted Mark around so that she could make sure "she did things right with [M.J.]." Valero testified that appellant could not take care of M.J. and could not provide for M.J.'s needs. Valero said that M.J. would face the danger of physical abuse if placed in appellant's care because appellant did not know how to take care of her.

After being removed from appellant's care, M.J. was placed in a foster home. She remained in the foster home until July 2007. At that time, M.J. was placed with her maternal aunt, E.B., and E.B.'s fiancé, J.B.[4] E.B. and J.B. had been together for twenty years, and they had an eight-year-old daughter who lived in their house. E.B. and J.B. planned to get married in 2011. They wanted to adopt M.J. Mayo testified that M.J. was "very bonded" to E.B. and J.B. and "extremely bonded" to their eight-year-old daughter. E.B. and J.B. were providing M.J. a safe and stable home environment, and they were meeting M.J.'s physical and emotional needs. The evidence showed that M.J. had thrived while in their care. E.B. testified that M.J. was walking and running and that M.J. was happy. Mendoza testified that adoption by E.B. and J.B. was in M.J.'s best interest because it would provide M.J. a permanent placement in a safe and stable home.

Appellant told Mendoza that E.B. had a "good home." However, appellant was mad at E.B. and did not want M.J. to be placed in E.B.'s care. Appellant was mad at E.B. because E.B. told her that she should leave Mark to get away from his physical abuse.

---

[4]We refer to M.J.'s aunt and her fiancé by their initials to protect M.J's identity.

Appellant had forty-eight supervised visits with M.J. after M.J. was removed from her care. Mayo testified that M.J. cried constantly during the visits and that M.J. had not developed a bond with appellant. Valero and Mendoza gave similar testimony about the visits.

Based on the evidence presented at trial, the trial court could have reasonably formed a firm belief or conviction that termination of appellant's parental rights was in the best interest of M.J. The evidence showed that appellant could not take care of M.J., meet M.J.'s physical or emotional needs, or provide M.J. a safe and stable environment. Appellant admitted that she did not know how to take care of M.J. Further, the evidence showed that appellant likely would not be able to provide M.J. a safe and stable environment or to meet her needs in the future. On the other hand, E.B. and J.B. had provided M.J. a safe and stable environment and had met her needs. M.J. had thrived physically and emotionally while in their care. M.J. had developed a bond with E.B. and J.B, and they wanted to adopt her. Thus, E.B. and J.B. planned to provide stability to M.J. and to meet her needs in the future. The evidence is legally and factually sufficient to support the best interest finding. Appellant's issue on appeal is overruled.

### *This Court's Ruling*

We affirm the trial court's order terminating appellant's parental rights to M.J.


TERRY McCALL

JUSTICE


September 13, 2012

Panel[5] consists of: Wright, C.J.,
McCall, J., and Hill.[6]

---

[5]Eric Kalenak, Justice, resigned effective September 3, 2012. The justice position is vacant pending appointment of a successor by the governor or until the next general election.

[6]John G. Hill, Former Chief Justice, Court of Appeals, 2nd District of Texas at Fort Worth, sitting by assignment.

7