Opinion filed November 3,
2011

 

 

 

                                                                       In The

                                                                              

  Eleventh
Court of Appeals

                                                                   __________

 

                                                         No. 11-10-00331-CV 

                                                    __________

 

                     IN
THE INTEREST OF A.M.M., A.N.M., E.J.M., 

                                  
A.E.E., AND B.T., CHILDREN



 

                                   On
Appeal from the 90th District Court

 

                                                          Stephens
County, Texas

 

                                                     Trial
Court Cause No. 29,910 

 



 

                                            M
E M O R A N D U M   O P I N I O N

            John
appeals from the trial court’s order terminating his parental rights to A.M.M.,
A.N.M., and E.J.M.  On appeal, John challenges the legal and factual
sufficiency of the evidence supporting the termination of his parental rights. 
We affirm.

Background

            Cynthia
and John are the parents of A.M.M., A.N.M., and E.J.M.  At the time of trial,
A.M.M. was ten years old, A.N.M. was nine years old, and E.J.M. was seven years
old.  Cynthia and Johann are the parents of A.E.E., who was four years old at
the time of trial.  Cynthia and Ben are the parents of B.T., who was one year
old at the time of trial.  In this case, the Texas Department of Family and
Protective Services sought termination of (1) Cynthia’s parental rights to all
five children; (2) John’s parental rights to A.M.M., A.N.M., and E.J.M.; (3)
Johann’s parental rights to A.E.E.; and (4) Ben’s parental rights to B.T.  Following
a bench trial, the trial court entered an order terminating John’s parental
rights to A.M.M., A.N.M., and E.J.M.  In the order, the trial court found by
clear and convincing evidence that termination of John’s parental rights was in
the best interest of the children and that John had:

      [1] knowingly
placed or knowingly allowed the children to remain in conditions or
surroundings which endanger the physical or emotional well-being of the children;
[and] 

 

      [2] engaged in
conduct or knowingly placed the children with persons who engaged in conduct
which endangers the physical or emotional well-being of the children.

 

In the order,
the trial court also terminated Johann’s parental rights to A.E.E.  The trial
court concluded that termination of Cynthia’s parental rights to the children
was not in the children’s best interest and that termination of Ben’s parental
rights to B.T. was not in B.T.’s best interest. Therefore, the trial court did not
terminate Cynthia’s parental rights to her children or Ben’s parental rights to
B.T.

            In
the order, the trial court appointed the Department as the permanent managing
conservator of all five children.  The trial court appointed Cynthia as a
permanent possessory conservator of the children and Ben as a permanent
possessory conservator of B.T.  The trial court’s order allows Cynthia and Ben
to have access to the children through visits supervised by the Department.

            John
has filed this appeal from the trial court’s order terminating his parental
rights.  No other party has appealed from the trial court’s order.

Issues
on Appeal

            John
presents three issues for review.  In his issues, he challenges the legal and
factual sufficiency of the evidence supporting the trial court’s findings (1)
that he knowingly placed or knowingly allowed the children to remain in
conditions that endangered the physical or emotional well-being of the
children, (2) that he engaged in conduct or knowingly placed the children with
persons who engaged in conduct that endangered the physical or emotional
well-being of the children, and (3) that termination of his parental rights was
in the children’s best interest.           




 

Sufficiency
of the Evidence

            Due
process requires that the grounds for termination be established by clear and
convincing evidence.  In re J.F.C., 96 S.W.3d 256, 263 (Tex. 2002). 
This requires a measure or degree of proof that will produce in the mind of the
trier of fact a firm belief or conviction as to the truth of the allegations
sought to be established.  Tex. Fam. Code
Ann. § 101.007 (West 2008); In re D.O., 338 S.W.3d 29, 33 (Tex.
App.—Eastland 2011, no pet.).  When conducting a legal sufficiency review, we
review all the evidence in the light most favorable to the finding to determine
whether a reasonable trier of fact could have formed a firm belief or
conviction that its finding was true.  City of Keller v. Wilson, 168
S.W.3d 802, 817 (Tex. 2005); In re J.F.C., 96 S.W.3d at 266; In re
J.P.H., 196 S.W.3d 289, 292 (Tex. App.—Eastland 2006, no pet.).  We must
assume that the factfinder resolved disputed facts in favor of its finding if a
reasonable factfinder could do so, and we disregard all evidence that a
reasonable factfinder could have disbelieved or found to have been incredible. 
In re J.F.C., 96 S.W.3d at 266.

            When
conducting a factual sufficiency review, we review the record as a whole,
including evidence in support of and contrary to the judgment, and give due
consideration to evidence that the trier of fact could have found to be clear
and convincing.  In re C.H., 89 S.W.3d 17, 25 (Tex. 2002); In re
J.P.H., 196 S.W.3d at 292–93.  We then determine whether the evidence is
such that the factfinder could reasonably form a firm belief or conviction
about the truth of the State’s allegations.  In re C.H., 89 S.W.3d at
25; In re J.P.H., 196 S.W.3d at 293.  We also consider whether any
disputed evidence is such that a reasonable factfinder could not have resolved
that evidence in favor of its finding.  In re J.F.C., 96 S.W.3d at 266; In
re J.P.H., 196 S.W.3d at 293.

            To
terminate parental rights, it must be shown by clear and convincing evidence
that the parent has committed one of the acts or omissions listed in Section
161.001(1)(A–T) and that termination is in the best interest of the child.  Tex. Fam. Code Ann. § 161.001 (West
Supp. 2010); In re J.L., 163 S.W.3d 79, 84 (Tex. 2005); In re A.V.,
113 S.W.3d 355, 362 (Tex. 2003).  In this case, the trial court found that John
violated Section 161.001(1)(D) and (E).  Specifically, the trial court found
(1) that John knowingly placed or knowingly allowed the children to remain in
conditions or surroundings that endangered the physical or emotional well-being
of the children (Section 161.001(1)(D)) and (2) that John engaged in conduct or
knowingly placed the children with persons who engaged in conduct that
endangered the physical or emotional well-being of the children (Section 161.001(1)(E)). 
    

            We
begin our analysis by considering the trial court’s finding that John violated
Section 161.001(1)(E).  To terminate a parent-child relationship based on
Section 161.001(1)(E), the trial court must find by clear and convincing
evidence that the parent “engaged in conduct or knowingly placed the child with
persons who engaged in conduct which endangers the physical or emotional
well-being of the child.”  See Section 161.001(1)(E).  “Endanger” means
to expose a child to loss or injury or to jeopardize a child’s emotional or
physical health.  Tex. Dep’t of Human Servs. v. Boyd, 727 S.W.2d 531,
533 (Tex. 1987); In re D.O., 338 S.W.3d at 34; Phillips v. Tex.
Dep’t of Protective & Regulatory Servs., 149 S.W.3d 814, 817 (Tex. App.—Eastland
2004, no pet.).  The conduct must be more than a threat of metaphysical injury
or the possible ill effects of a less-than-ideal family environment.  However,
it is not necessary that the conduct be directed at the child or that the child
actually suffers an injury.  In re D.O., 338 S.W.3d at 34; Doyle v.
Tex. Dep’t of Protective & Regulatory Servs., 16 S.W.3d 390, 394 (Tex.
App.—El Paso 2000, pet denied).  The relevant inquiry is whether evidence
exists that a parental course of conduct endangered the child’s physical or
emotional well-being.  Walker v. Tex. Dep’t of Family & Protective
Servs., 312 S.W.3d 608, 616-17 (Tex. App.—Houston [1st Dist.] 2009, pet.
denied); In re R.D., 955 S.W.2d 364, 368 (Tex. App.—San Antonio 1997,
pet. denied).        

            The
cause of danger to the child must be the parent’s conduct alone, as evidenced
not only by the parent’s actions but also by the parent’s omissions and
failures to act.  Doyle, 16 S.W.3d at 395; In re S.H.A., 728
S.W.2d 73, 85 (Tex. App.—Dallas 1987, writ ref’d n.r.e.).  Termination under
Section 161.001(1)(E) must be based on more than a single act or omission; a
voluntary, deliberate, and conscious course of conduct by the parent is
required.  In re D.O., 338 S.W.3d at 34; In re J.W., 152 S.W.3d
200, 205 (Tex. App.—Dallas 2004, pet. denied).  The conduct need not occur in
the presence of the child.  Walker, 312 S.W.3d at 617.  The conduct may
occur before the child’s birth and both before and after the child is removed
by the Department.  Id.  

            As a
general rule, conduct that subjects a child to a life of uncertainty and
instability endangers the physical and emotional well-being of a child.  In
re R.W., 129 S.W.3d 732, 739 (Tex. App.—Fort Worth 2004, pet. denied); In
re S.D., 980 S.W.2d 758, 763 (Tex. App.—San Antonio 1998, pet.
denied).  Imprisonment of the parent is a factor to consider on the issue of
endangerment.  Boyd, 727 S.W.2d at 533; In re D.O., 338 S.W.3d at
34.  However, imprisonment by itself is not enough to constitute engaging in
conduct that endangers the emotional or physical well-being of the child.  Boyd,
727 S.W.2d at 533-34; In re D.O., 338 S.W.3d at 34.  On the other hand,
if the evidence, which includes imprisonment, shows a course of conduct that
has the effect of endangering the physical or emotional well-being of the
child, a finding of endangerment is supportable.  Boyd, 727 S.W.2d
533-34; In re D.O., 338 S.W.3d at 34.  Conduct that routinely subjects a
child to the probability that the child will be left alone because a parent is
jailed endangers both the physical and emotional well-being of the child.  Walker,
312 S.W.3d at 617.  Also, evidence of narcotics use and its effect on a
parent’s life and ability to parent may establish that the parent has engaged
in an endangering course of conduct.  Id. at 618.  Because the use of
illegal drugs by a parent exposes the child to the possibility that the parent
may be impaired or imprisoned, illegal drug use may support termination under
Section 161.001(1)(E).  Id. at 617; In re R.W., 129 S.W.3d at
739.  Additionally, abusive or violent conduct by a parent may produce an
environment that endangers the physical or emotional well-being of the child.  In
re J.T.G., 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.).  Thus,
a parent’s abuse of the other parent or children can support a finding of
endangerment under Section 161.001(1)(E).  In re J.O.A., 283 S.W.3d 336,
346 (Tex. 2009); In re D.O., 338 S.W.3d at 34.

            Cynthia
met John when she was twelve years old.  They began a relationship, and Cynthia
gave birth to A.M.M. when she was fourteen years old.  At that time, John was
sixteen years old.  Cynthia and John lived with her parents at times, and they
lived with John’s parents at other times.  Cynthia gave birth to A.N.M. when
she was fifteen years old and to E.J.M when she was seventeen years old.  Cynthia
and John both dropped out of school.

            Cynthia
and John were in a relationship from 1999 until 2005.  Cynthia testified that,
during their relationship, John verbally and physically abused her.  She said
that John hit her with his fist.  She said that, in 2003, John stabbed her with
a knife.  Cynthia testified that the stabbing left her with a permanent scar.  She
described John’s physical abuse of her as ongoing conduct that happened
repeatedly over a period of years.  Cynthia said that John abused her because
he was “insanely jealous.”  Cynthia testified that John never hit her in front
of the children.  Cynthia’s sister, Dominga Baggett, testified that she was
aware that John physically abused Cynthia.  Dominga saw physical altercations
between Cynthia and John.  Dominga said that Cynthia and John engaged in
fistfights and that the children were present when some of the fights began.  Dominga
said that she took the children out of the house on occasions when John and
Cynthia were fighting.  A.M.M. told Brandi Sattarphai, the Department’s
caseworker, that “[John] used to hurt [Cynthia].”  John testified that he verbally
abused Cynthia but that he never physically abused her.   

            Cynthia
said that John used methamphetamine, cocaine, and marihuana during their relationship. 
She said that he did not use drugs at home but that he used them when he was
“out running the streets.”  John testified that he used cocaine and
methamphetamine intravenously during his relationship with Cynthia.  He said
that he used these drugs when he went off on weekend drug binges that lasted
two or three days.  John said that he participated in these weekend drug binges
“[o]nce or twice every three to six months.”

            Cynthia
testified that she left John in 2005 “because he was abusive and he wouldn’t
change his lifestyle.”  John testified that his methamphetamine abuse got
really bad in 2006 after his mother died.  He said that, at that time, his drug
binging increased to every other weekend.  John said that he had not used drugs
since June 2007.

            The Department
presented evidence that John continued to engage in a pattern of abuse of women
after his relationship with Cynthia ended.  Two of John’s subsequent
girlfriends, Jennifer Perez and Pricilla Moreno, obtained protective orders
against him.  John said that Perez obtained the order to prevent him from
harassing her and committing acts of violence against her.  Moreno obtained the
protective order based on allegations that John had threatened to hit her.  On
two occasions in 2007, John violated the protective order that Perez had
obtained.  John pleaded guilty to violating Perez’s protective order in both
cases.  In each case, the court convicted John of the offense and sentenced him
to forty-five days confinement in the county jail.  On April 12, 2010, John
pleaded guilty to the third degree felony offense of stalking.  The victim in
the stalking case was Moreno.  The judgment of conviction identifies the date
of the offense as May 30, 2009, through June 27, 2009.  John was sentenced to confinement
for four years for the stalking offense.  During his testimony, John said that
he and Moreno were back together.

            John
has a number of convictions in addition to those described above.  In 2006, he pleaded
guilty to driving while intoxicated in Eastland County.  The court convicted
him.  He was placed on community supervision for one year, and his community
supervision was later extended by six months.  John moved to Amarillo in 2006. 
His community supervision was transferred to Potter County.  Later, the State
filed a motion to revoke John’s community supervision in the Eastland County
case, and ultimately, the court revoked his community supervision.  In 2008,
John pleaded guilty to a tampering-with-evidence offense in Potter County.  The
court deferred adjudication of guilt and placed John on community supervision
for three years.  On January 10, 2010, John was convicted of a failure-to-identify
offense and sentenced to confinement for sixty days in the county jail.  On
February 9, 2010, John was convicted of a theft offense and sentenced to
confinement for sixty days in the county jail.  On April 12, 2010, which was the
date that John was convicted in the stalking case, the court adjudicated John’s
guilt on the tampering-with-evidence offense.  The court sentenced John to
confinement for four years and ordered that John’s sentences for the stalking offense
and the tampering-with-evidence offense run concurrently. 

            At
the time of trial, John was serving his four-year sentences on his convictions
for the stalking and tampering-with-evidence offenses.  He testified that he
had two years and eight months remaining on the sentences.  He said that he had
a mandatory release date for parole in June 2011.  John testified that his
incarceration for the stalking and tampering-with-evidence offenses was the only
time that he had been in prison.  He said that he had been in jail about ten
times.

            John
had limited contact with his children after his relationship with Cynthia
ended.  Cynthia testified that John saw A.M.M., A.N.M., and E.J.M. for “a
couple of hours” once every three or four months.  John testified that he saw
his children “[o]nce or twice every three months, maybe more.”  Cynthia has a
history of methamphetamine abuse and an extensive criminal history.  Cynthia
testified that, at her request, John kept the children from February 2009 to
March 2009 when “[she] was trying to get [herself] together.”  On that
occasion, John kept the children for about a month.  John testified that he returned
the children to Cynthia because “[they] wanted to go back, and I had caught a
warrant anyways.”  John testified that he had not seen his children since March
2009, which was about eighteen months before trial.

            The
Department removed A.M.M., A.N.M., and E.J.M. from Cynthia’s care on April 1,
2009.  All five children were placed with the same foster parents, and they
remained in the care of the same foster parents at the time of trial.  The
Department presented detailed evidence that the children had a good
relationship with their foster parents, that their foster parents were
providing the children with a stable home, and that their foster parents were
meeting the children’s physical and emotional needs.

            In
this case, the trial court’s function, as the trier of fact, was to judge the
credibility of the witnesses, assign the weight to be given their testimony,
and resolve any conflicts or inconsistencies in the testimony.  In re R.W.,
129 S.W.3d at 742.  The trial court was entitled to believe all, part, or none
of the testimony of any witness.  In re T.N., 180 S.W.3d 376, 382–83
(Tex. App.—Amarillo 2005, no pet.).  Based on the evidence, the trial court
could have reasonably concluded that John engaged in a pattern of domestic
violence against Cynthia; that John had a long history of intravenous cocaine
and methamphetamine abuse; that John had an extensive criminal history and
numerous convictions, including recent convictions; that John had been
incarcerated in county jails on a number of occasions; and that John was
incarcerated in prison at the time of trial.  These facts are sufficient to
allow a reasonable trier of fact to form a firm belief or conviction that John
engaged in a voluntary, deliberate, and conscious course of conduct that
endangered the physical or emotional well-being of A.M.M., A.N.M., and E.J.M. 
Therefore, the evidence is legally and factually sufficient to support
termination under Section 161.001(1)(E) of the Texas Family Code.  

            John’s
second issue on appeal is overruled.  Because only one ground is needed to
support a termination order, we need not address John’s first issue challenging
the sufficiency of the evidence to support the trial court’s finding under
Section 161.001(1)(D) of the Family Code.

            The
next question we must address is whether the best-interest finding is supported
by legally and factually sufficient evidence.  With respect to the best interest
of a child, no unique set of factors need be proved.  In re C.J.O., 325
S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied).  But, courts may use
the non-exhaustive Holley factors to shape their analysis.  Holley v.
Adams, 544 S.W.2d 367, 371–72 (Tex. 1976).  These include, but are not
limited to, (1) the desires of the child, (2) the emotional and physical
needs of the child now and in the future, (3) the emotional and physical danger
to the child now and in the future, (4) the parental abilities of the
individuals seeking custody, (5) the programs available to assist these
individuals to promote the best interest of the child, (6) the plans for the
child by these individuals or by the agency seeking custody, (7) the stability
of the home or proposed placement, (8) the acts or omissions of the parent that
may indicate that the existing parent-child relationship is not a proper one,
and (9) any excuse for the acts or omissions of the parent.  Id. 
Additionally, evidence that proves one or more statutory grounds for
termination may also constitute evidence illustrating that termination is in
the child’s best interest.  In re C.J.O., 325 S.W.3d at 266.  A trier of
fact may measure a parent’s future conduct by his or her past conduct and
determine that it is in the child’s best interest to terminate parental
rights.  In re D.S., 333 S.W.3d 379, 384 (Tex. App.—Amarillo 2011, no
pet.). 

            The
evidence showed that A.M.M., A.N.M., and E.J.M. were removed from Cynthia’s
care on April 1, 2009.  Since that date, the children had been living in the
same foster home.  Their foster parents had provided a stable environment for
the children and had met the children’s needs.  The children had a good
relationship with their foster parents.  John had not exhibited adequate
parenting abilities in the past.  As summarized above, the Department presented
evidence that John had engaged in a pattern of violence against Cynthia and
that John’s pattern of violence against women continued after his relationship
with Cynthia ended.  John has a lengthy history of drug abuse and a lengthy
criminal history.  He has been in and out of jail.  He was incarcerated at the
time of trial.  The evidence demonstrated that John could not provide A.M.M.,
A.N.M., and E.J.M. a stable home environment or meet their physical and
emotional needs.  Further, there was no evidence that John would be able to
sustain a stable environment for the children or to meet the children’s needs
in the future.  Considering the evidence relating to John’s past conduct, the
trial court could have reasonably concluded that he would not be able to
provide the children with a stable environment or to meet their needs in the
future.

            Based
on the evidence, the trial court could reasonably have formed a firm belief or
conviction that termination of John’s parental rights would be in the best
interest of A.M.M., A.N.M., and E.J.M.  We cannot hold that this finding is not
supported by clear and convincing evidence.  The evidence is legally and
factually sufficient to support the finding that termination of John’s parental
rights is in the best interest of A.M.M., A.N.M., and E.J.M.  John’s third
issue is overruled.

This
Court’s Ruling

            We
affirm the trial court’s order terminating John’s parental rights to A.M.M.,
A.N.M., and E.J.M.

 

 

                                                                                                TERRY
McCALL

                                                                                                JUSTICE

November 3, 2011

Panel consists of:  Wright, C.J.,

McCall, J., and Kalenak, J.