**Darryl HAMPTON, Appellant,**

v.

**TEXAS DEPARTMENT OF PROTEC- TIVE AND REGULATORY SER- VICES, Appellee.**

No. 08–03–00474–CV.

Court of Appeals of Texas, El Paso.

June 10, 2004.

Chris Antcliff, El Paso, TX, for Appellant.

Jose R. Rodriguez, County Atty., El Paso, Kirsten M. Castaneda, Dallas, TX, for Appellee.

Before Panel No. 1 LARSEN, McCLURE, and CHEW, JJ.

## OPINION

SUSAN LARSEN, Justice.

Darryl Hampton, father of the minor child D.H., appeals the trial court's judgment terminating his parental rights, following a bench trial. In three issues, he challenges the legal and factual sufficiency of the evidence to support the termination. We affirm.

## Facts

Darryl Hampton is the father, and Ryan Davenport the mother, of D.H., a girl born in October 2000. In February 2002, the Texas Department of Protective and Regulatory Services (the Department) removed D.H. from her mother's custody. Ryan Davenport has relinquished parental rights to both children. The father of D.H.'s half-sister has also had his parental rights terminated. D.H. and her sister now live with foster parents who wish to adopt them both. Darryl Hampton was in prison at the time D.H. was removed from her mother's home.

## Standard of review

A trial court may terminate parental rights if it finds that (1) the parent has engaged in any of the conduct enumerated in the Family Code as grounds for termination; and (2) termination is in the best interest of the child. Tex. Fam.Code Ann. § 161.001 (Vernon 2002); *In re W.E.C.*, 110 S.W.3d 231, 236 (Tex.App.-Fort Worth 2003, no pet.). The State has the burden to prove these elements by clear and convincing evidence. *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex.2002); *Salas v. Texas Department of Protective and Regulatory Services*, 71 S.W.3d 783, 788 (Tex.App.-El Paso 2002, no pet.). "Clear and convincing" means the measure or degree of proof producing in the mind of the fact finder a firm belief or conviction as to the truth of the allegation sought to be established. *J.F.C.*, 96 S.W.3d at 264.

In reviewing a legal sufficiency challenge, we consider all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. *Id.* at 266. We must assume that the fact finder resolved disputed facts in favor of its finding if a reasonable fact finder could do so. *Id.* While we consider undisputed evidence against the finding, we disregard all evidence that a reasonable fact finder could have disbelieved or found to have been incredible. *Id.* The evidence is legally insufficient only if no reasonable fact finder could form a firm belief or conviction that the thing to be proven is true. *Id.*

In reviewing a factual sufficiency challenge, we consider all the evidence, both for and against the finding, in a neutral light. We determine whether a fact finder could reasonably form a firm belief

or conviction about the truth of the Department's allegations. *In re C.H.*, 89 S.W.3d 17, 25 (Tex.2002). We do not substitute our judgment for that of the fact finder, merely because we might reach a different conclusion, nor do we assay the credibility of witnesses. *See id.* at 26 (admonishing that fact finders and appellate courts must maintain respective constitutional roles).

## Imprisonment and inability to care for child

 In his second issue on appeal, Hampton contends that there was legally and factually insufficient evidence to support the trial court's finding that Hampton knowingly engaged in conduct that resulted in his conviction of an offense and confinement or imprisonment and inability to care for the child for not less than two years from the date the petition for termination was filed, a ground for termination under Tex. Fam.Code Ann. § 161.001(1)(Q) (Vernon 2002). Hampton acknowledges that the first prong of this ground is met, as evidence showed that he was incarcerated at the time the Department's original petition was filed on February 8, 2002, and his projected release date was April 2004.[1] He disputes only that the Department proved by clear and convincing evidence his inability to care for the child during his incarceration.

 It is true, as Hampton asserts, that incarceration alone cannot support a termination of parental rights. *Tex. Dept. of Human Services v. Boyd,* 727 S.W.2d 531, 533 (Tex.1987); *In re Caballero,* 53 S.W.3d 391, 395 (Tex.App.-Amarillo 2001, pet. denied). By including the element

that the incarcerated parent have the "inability to care for the child," the legislature clearly recognized this. *See Caballero,* 53 S.W.3d at 396. The Amarillo Court of Appeals, in analyzing the burden of proof presented by this subsection, found that once the Department has established the incarceration element, the burden shifts to the parent to produce some evidence of how he or she will arrange care during that period. When that burden of production is met, the Department is then required to persuade the court that the stated arrangements would not satisfy the parent's burden to the child. *Caballero,* 53 S.W.3d at 396. We agree that this is a reasoned approach, and we adopt it here.

Thus, it fell to Hampton to produce evidence of his arrangements for care of D.H. during his imprisonment. He points to the following as having met his burden. He wrote to the court and suggested his mother and sister as potential placements for the care of his daughter. He wrote nine letters to the Department regarding his daughter. When his mother and sister were determined to be unsuitable placements, Hampton provided (during trial) the names of other potential relative placements for D.H. He supported his daughter by signing over his IRS refund and six paychecks to D.H.'s mother, a total of approximately $2,000. Finally, he submitted a written permanency plan for D.H. to the Department, although the content of this plan is not part of the appellate record.

The Department responds that its application under the Interstate Compact for the Placement of Children to North Carolina, where Hampton's mother and sister

---

1. On January 28, 2001, Hampton was arrested for burglary of a habitation. He was placed on deferred adjudication probation on May 22, 2001. He remained on probation until July 3, 2001, when he was arrested again for burglary. His probation was revoked and he received a three-year sentence on his initial burglary charge. He began serving the three-year sentence on September 27, 2001.

live, was denied. The Department's North Carolina counterpart rejected these relatives as potential caregivers because Hampton's mother "was well known by [the North Carolina] agency, that she had had some children placed with her who were subsequently removed from her care," and his sister had a pending criminal charge for assault. The Department further points out that Hampton did not present any testimony or other evidence from anyone—his mother, sister, or the other two relatives he named during trial—showing a willingness or ability to care for D.H. for the remainder of Hampton's imprisonment. The Department contends that this mere naming of relatives, without some showing of willingness, capacity, and competence, is not sufficient to meet Hampton's burden of production on this issue. The Department also maintains that neither writing letters to the department nor signing over his IRS refund check and final paychecks are any evidence of ability to care for D.H.[2] Finally, the Department urges that no conclusions can be drawn from the permanency plan apparently filed by Hampton, as the plan is not in this record and thus cannot be evidence of arrangements to care for D.H.

Viewing this evidence in the light most favorable to the judgment of termination, we find the fact finder could reasonably form a firm belief that Hampton was unable to care for D.H. during the period of his incarceration. There is legally sufficient evidence to support the finding. Moreover, viewing the entire record in a neutral light, we find that the disputed evidence which could not have been credited by the fact finder is not so significant that the court could not reasonably form a firm belief. Thus, there is likewise factually sufficient evidence supporting the trial court's finding that Hampton had knowingly engaged in criminal conduct resulting in his incarceration and inability to care for D.H. during two years following the filing of the Department's petition. Hampton's second issue on appeal is overruled.

### Best interest of the child

In his third issue, Hampton argues that the evidence was legally and factually insufficient to support the finding that termination of his parental rights was in D.H.'s best interest.

Although the trial court starts from a strong presumption that a child's best interests are served by keeping the child with her natural parents, that presumption disappears when confronted by evidence to the contrary. *In re A.I.G.*, 2003 WL 1611426, at *4 (Tex.App.-San Antonio March 31, 2003, no pet.). In determining a child's best interest, the trial court may consider many factors, including but not limited to (1) the child's desires; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the plans for the child by these individuals; (6) the stability of the home; (7) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (8) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex.1976). While incarceration alone is not sufficient to show that termination is in the child's best interests, it can be part of a course of conduct demonstrating that

---

**2.** Under the circumstances here, where the child's mother is not caring for her and has relinquished her parental rights, we agree that a fact finder could reasonably give this evidence little weight. Where a responsible mother or other caretaker was receiving the funds and caring for the child, however, we might view it very differently.

termination is in the child's best interests. *See In re J.N.R.,* 982 S.W.2d 137, 142–43 (Tex.App.-Houston [1st Dist.] 1998, no pet.), *disapproved on other grounds, In re J.F.C.,* 96 S.W.3d 256 (Tex.2002).

The evidence supporting the trial court's conclusion that termination was in D.H.'s best interest includes the following. Hampton left his first two children with their mother in North Carolina in 1995 and has not visited them again. Hampton had a long history of entanglements with the law, including assaultive conduct, culminating in his three-year sentence for burglary. Before his arrest in 2001, Hampton reported he drank five to eight alcoholic beverages "on a day off." Hampton has not provided financial support for D.H. since July 2001, other than three paychecks from Luby's signed over to Davenport. D.H. had not seen her father regularly since she was nine months old. D.H. and her half-sister are very close, have lived together since the sister's birth, and love each other. Separating them would be detrimental to both. Their foster parents wish to adopt both girls. The emotional, physical, and financial needs of D.H. are being met by her foster parents.

In arguing that the evidence does not support the best interest finding, Hampton points to the following. Hampton wrote to the court immediately upon learning that D.H. had been removed from her mother's care, asking that she be returned to her mother or alternatively be placed with his relatives if Davenport was not competent to care for D.H. He wrote numerous letters to the Department regarding his daughter. After his incarceration, he signed over an IRS check and three paychecks for D.H.'s support. Later, he signed over three additional paychecks. He submitted a plan for D.H.'s care, as required by the Department. He also points out that he has taken classes while

in jail, that he would take parenting classes if they were available, and that he asked the Department to arrange visitation with D.H.

Clearly, a reasonable fact finder could reach a firm belief or conviction that termination of Hampton's parental rights are in D.H.'s best interest, viewing the evidence in the light most favorable to termination. Viewing the evidence in a neutral light, we also conclude that there was sufficient evidence to support the trial court's conclusion that termination of Darryl Hampton's parental rights was in D.H.'s best interest, and disputed evidence is not so strong as to cast doubt on the trial court's conclusions. Hampton's third issue on appeal is overruled.

## Conclusion

We may affirm the trial court's judgment upon finding any of the alleged grounds for termination is a proper one, together with a proper finding that termination is in the best interest of the child. *Caballero,* 53 S.W.3d at 395. Thus, we need not reach Hampton's first issue on appeal. The trial court's judgment terminating Darryl Hampton's parental rights to the child D.H. is affirmed.