Opinion issued September 22, 2011



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-10-00767-CV

———————————

In the Interest of J.D.S., a child



 



 

On Appeal from the 314th District Court

Harris County, Texas



Trial Court Case No. 2009-00826J-A

 



 

MEMORANDUM OPINION

          Appellant
S.S. appeals the trial court’s judgment terminating his parental rights to his daughter,
J.D.S.  In two issues, S.S. challenges
the legal and factual sufficiency of the evidence that he constructively
abandoned J.D.S. and that termination of his parental rights was in her best
interest.  We affirm.

Background

J.D.S. was born in Texas in late
2007, and S.S. was listed on the birth certificate as her father.  As an infant, J.D.S. lived in Missouri with
her parents and her older half-brother.  When
J.D.S. was approximately seven months old, S.S. committed eight crimes over a
two-week period.  These crimes included arson,
burglary, and stealing. 

By September 2008, J.D.S. was in
the care of her maternal grandmother in Texas.  S.S. later said that he had no contact with
J.D.S. at this time because her grandmother did not allow it.  In January 2009, when J.D.S. was just over a
year old, she fell from the window of a second-story apartment.  The Department of Family and Protective
Services took custody of her.  At that
time, her mother was homeless and addicted to drugs, and her father was
incarcerated in Missouri.  The mother
later relinquished her parental rights.

Approximately three months later,
S.S. wrote to the Department and stated that although he was incarcerated in
Missouri he did not wish to relinquish his parental rights to J.D.S.  He stated that his mother, who lived in
Missouri, could take temporary custody of J.D.S. until his release from prison,
and he asked for assistance in completing the arrangements necessary to
accomplish that.  The trial court ordered
that a home study be requested pursuant to the Interstate Compact on the
Placement of Children.  At trial, Eva
Dix, the Department caseworker assigned to supervise J.D.S.’s case, testified
that the home study was denied, implying that S.S.’s mother was rejected as a
suitable guardian for J.D.S.  S.S.’s
mother did not appear at trial, and there is no indication in the record that
she made any contact or attempt to gain custody of J.D.S.

Dix was one of only two witnesses
who testified at trial.  She testified
that J.D.S. was in foster care with her half-brother and that the foster
parents wished to adopt both children. 
She believed that adoption by the foster parents was in the best
interest of J.D.S.  Dix testified that
S.S. was serving a ten-year sentence for arson, and he was eligible for
conditional release in July 2015.  The
evidence at trial showed that S.S. was actually serving eight concurrent
ten-year sentences for the crimes he committed during this 2008 crime spree.  Dix testified that S.S.’s contact with the
Department was limited to several letters, which indicated that he was
incarcerated but that he wished to retain his parental rights to J.D.S.  Dix said that she wrote to S.S. and sent him
pictures and a family service plan.  S.S.
responded that he intended to take parenting classes while in prison, but he never
verified that he had completed any of the services listed in the family service
plan.  Dix also testified that in the 18
months in which the Department had custody of J.D.S., S.S.’s contact with his
daughter was limited to two letters or drawings and one birthday card.  Dix testified that S.S. was not part of his
daughter’s life when she came in the Department’s care and that termination of
S.S.’s parental rights was in her best interest.  She said, “They don’t have a relationship as
far as the agency is concerned.  Since
the agency has been involved, there is not an established relationship.”  On cross-examination, Dix testified that S.S.
had done everything he could to maintain contact with his daughter while
incarcerated.

The second and final witness at
trial was Allison Ward, the child advocate for J.D.S.  Ward testified that J.D.S. and her brother
were in a loving home and that it was in J.D.S.’s best interest for her
father’s parental rights to be terminated. 
When the trial court asked why she thought his rights should be
terminated, Ward said, “From what I’ve seen since I’ve been on the case, [he
has] had no involvement with [J.D.S.], which has been 18 months.”  On cross-examination, Ward testified that she
had never had any contact with S.S.

After the parties rested, the trial
court found S.S. had constructively abandoned J.D.S., as defined by Section 161.001(1)(N)
of the Texas Family Code, and that it was in the best interest of J.D.S. for
S.S.’s parental rights to be terminated. 
S.S. appealed.

Sufficiency
of the evidence

I.                 
Standards of review

In proceedings to terminate the
parent-child relationship brought under Texas Family Code section 161.001, the
Department must establish that one or more of the acts or omissions enumerated
under section 161.001(1) is satisfied and that termination is in the best
interest of the child.  Tex. Fam. Code Ann. § 161.001
(West Supp. 2010).  Both elements must be
established, and termination may not be based solely on the best interest of
the child as determined by the trier of fact.  Tex.
Dep’t of Human Servs. v. Boyd, 727 S.W.2d 531, 533 (Tex. 1987).  A trial court’s decision to terminate parental
rights must be supported by clear and convincing evidence.  In re
J.F.C., 96 S.W.3d 256, 263–64 (Tex. 2002); In re V.V., No. 01-08-00345-CV, 2010 WL 2991241, at *4 (Tex.
App.—Houston [1st Dist.] July 29, 2010, pet. denied) (en banc).  “‘Clear and convincing evidence’ means the
measure or degree of proof that will produce in the mind of the trier of fact a
firm belief or conviction as to the truth of the allegations sought to be
established.”  Tex. Fam. Code Ann. § 101.007 (West 2008).  In reviewing evidentiary sufficiency, we evaluate
“the sufficiency of the evidence presented under the specific statutory grounds
found by the trial court in its termination order.”  Cervantes-Peterson
v. Dep’t of Family & Protective Servs., 221 S.W.3d 244, 252 (Tex.
App.—Houston [1st Dist.] 2006, no pet.) (en banc). 

“[I]n conducting a legal
sufficiency review in a termination-of-parental-rights case, we must determine
whether the evidence, viewed in the light most favorable to the finding, is
such that the fact finder could reasonably have formed a firm belief or
conviction about the truth of the matter on which the State bore the burden of
proof.”  Cervantes-Peterson, 221 S.W.3d at 249 (citing In re J.F.C., 96 S.W.3d at 266).  “In viewing the evidence in the light most
favorable to the judgment, we ‘must assume that the fact finder resolved
disputed facts in favor of its finding if a reasonable fact finder could [have
done] so,’ and we ‘should disregard all evidence that a reasonable fact finder
could have disbelieved or found to have been incredible.’”  Id.
(quoting In re J.P.B., 180 S.W.3d
570, 573 (Tex. 2005)).

“In conducting a factual
sufficiency review in a termination-of-parental-rights case, we must determine
whether, considering the entire record, including both evidence supporting and
evidence contradicting the finding, a fact finder reasonably could have formed
a firm conviction or belief about the truth of the matter on which the State
bore [the] burden of proof.”  Id. at 250 (citing J.P.B., 180 S.W.3d at 573; In
re C.H., 89 S.W.3d 17, 25 (Tex. 2002)). “We should consider whether the
disputed evidence is such that a reasonable fact finder could not have resolved
the disputed evidence in favor of its finding.”  Id.
(citing J.F.C., 96 S.W.3d at 266–67).
 “‘If, in light of the entire record, the
disputed evidence that a reasonable fact finder could not have credited in
favor of the finding is so significant that a factfinder could not reasonably
have formed a firm belief or conviction, then the evidence is factually
insufficient.’”  Id. (quoting J.F.C., 96
S.W.3d at 266).  

II.              
Constructive abandonment

In his first issue, S.S. contends
that the evidence was legally and factually insufficient to support the trial
court’s conclusion that he constructively abandoned J.D.S. In its termination
decree, the trial court stated that it found by clear and convincing evidence
that termination of S.S.’s parental rights was in J.D.S.’s best interest and
that S.S. had constructively abandoned J.D.S.  Section 161.001(1)(N) of the Texas Family Code
provides, as a ground for termination of parental rights, that a parent
constructively abandons his child if: (1) the child has been in the permanent
or temporary managing conservatorship of the Department or an authorized agency
for not less than six months; (2) the Department or authorized agency has made
reasonable efforts to return the child to the parent; (3) the parent has not
regularly visited or maintained significant contact with the child; and (4) the
parent has demonstrated an inability to provide the child with a safe
environment.  Tex. Fam. Code Ann. § 161.001(1)(N).

S.S. does not dispute that J.D.S.
had been in the managing conservatorship of the Department for at least six
months or that the Department made reasonable efforts to return J.D.S. to
him.  S.S. instead focuses on the last
two elements, arguing that his correspondence with J.D.S. was significant and
that he demonstrated his ability to provide J.D.S. with a safe environment by
identifying his mother as a person who could care for J.D.S. until his release
from prison.

          Visitation and contact with the child.  S.S. contends that his contacts
with J.D.S. were sufficient because he was incarcerated in Missouri and he did
all he possibly could do to maintain contact with his daughter, who was not yet
three years old at the time of trial.  In
addition, he argues that all of his correspondence indicated a desire for
contact with his child.  The documents
from the Missouri Department of Corrections that were admitted at trial in July
2010 indicate that S.S. had been in jail or prison since July 5, 2008.  In a letter to the trial judge, S.S. stated
that he had not had telephone contact with his daughter since at least
September 2008.  And the only contacts he
had with J.D.S. in the 18 months in which she was in the custody of the
Department were two letters or drawings and a single birthday card.  Both the caseworker and the child advocate
testified that he had no relationship with J.D.S. during the 18 months that she
was in foster care.  Although we are
mindful that imprisonment alone is not a basis to terminate parental rights, see Boyd, 727 S.W.2d at 533–34, sporadic
correspondence from a parent to a child is insufficient to establish
significant contact.  See In re N.R.T., 338 S.W.3d 667, 673–74
(Tex. App.—Amarillo 2011, no pet.) (holding that single note from mother to
child prior to her incarceration was not significant contact).  Though his desire to have contact with J.D.S.
is commendable, his minimal and sporadic correspondence supports the trial
court’s conclusion that he did not regularly maintain significant contact with
her.

Ability to
provide safe environment for child.  S.S. argues
that, because he suggested his mother as a potential guardian and either took
or intended to take parenting and welding classes in prison, the evidence was
insufficient to show that he was unable to provide a safe environment for his
daughter.  

The trial court ordered that,
pursuant to the Interstate Compact on the Placement of Children, a home study
be made to evaluate the potential to place J.D.S. with S.S.’s mother.  Under the Family Code, the Department must
investigate a proposed placement to determine if it is in the child’s best
interest.  Tex. Fam. Code Ann. § 264.754 (West 2008); see In re Northrop, 305 S.W.3d 172, 177
& n.4 (Tex. App.—Houston [1st Dist.] 2009, orig. proceeding).  When the proposed placement is out of state,
the Department must also comply with the Interstate Compact on the Placement of
Children, which requires the agency in the state of the proposed placement to provide
notice to the sending agency, in writing, to the effect that the “placement
does not appear to be contrary to the interests of the child.”  Tex.
Fam. Code Ann. § 162.102 (West 2008).  Dix testified that the home study was
“denied.”  None of the attorneys asked
any follow-up questions about why the home study was denied.  S.S. contends that without such evidence the
trial court was not able to determine whether S.S.’s mother could provide a
safe environment for J.D.S.

However, the trial court was able
to determine that, under the Interstate Compact for the Placement of Children,
the Missouri agency refused to certify that placement with S.S.’s mother did not
appear to be contrary to J.D.S.’s best interests.  Thus, the evidence supported the implied
finding that S.S.’s mother was not a suitable or legally viable proposed
placement.  See, e.g., In re N.R.T.,
338 S.W.3d 667, 674–75 (Tex. App.—Amarillo 2011, no pet.).  S.S. did not identify any other person as a
potential guardian for his daughter.  In
addition, S.S.’s mother was not present at trial and did not otherwise appear
in this litigation or attempt to gain custody of J.D.S.

S.S. also argues that his efforts
at self-improvement should be dispositive of this issue.  Although S.S. wrote a letter indicating that
he intended to pursue parenting and welding classes, nothing in the record
shows that he completed either course. 
Finally, S.S. argues that he offered to pay child support.  But the record shows that as an inmate, S.S.
earns only $8.50 a month.  Taken
together, this evidence supports the trial court’s finding that S.S. did not
demonstrate an ability to provide a safe environment for his child.  See Hampton
v. Tex. Dep’t of Protective & Regulatory Servs., 138 S.W.3d 564, 567–68
(Tex. App.—El Paso 2004, no pet.) (holding that, under section 161.001(1)(Q),
incarcerated parent did not show ability to care for child when two proposed
relative placements were denied under Interstate Compact for Placement of
Children and that signing over IRS refund check and paychecks was no evidence
of ability to care for child without evidence that money was being spent on
child’s care).

          Viewing
the evidence in both the light most favorable to the finding and in its
entirety, we conclude that the fact finder could reasonably have formed a firm
belief or conviction that S.S. did not maintain significant contact with J.D.S.
and that S.S. did not have the ability to provide for his daughter.  We overrule S.S.’s first issue.

III.          
Best interest of the child

In his second issue, S.S. contends
that the evidence is legally and factually insufficient to support the trial
court’s judgment that termination is in the best interest of the child because
he has maintained significant contact with his daughter while in prison, taken
parenting classes, and expressed a desire or plan to take welding classes.

A strong presumption exists that a
child’s best interests are served by maintaining the parent-child relationship.
 In
re L.M., 104 S.W.3d 642, 647 (Tex. App.—Houston [1st Dist.] 2003, no pet.).  The same evidence of acts or omissions used
to establish grounds for termination under section 161.001(1) may be probative
in determining the best interests of the child.  Id.
(citing In re C.H., 89 S.W.3d 17, 28
(Tex. 2002)).  The Texas Supreme Court
has provided a nonexclusive list of factors that the fact finder in a
termination case may use to determine the best interest of the child.  Holley
v. Adams, 544 S.W.2d 367, 371–72 (Tex. 1976).  These factors include (1) the desires of the
child; (2) the emotional and physical needs of the child now and in the future;
(3) the emotional and physical danger to the child now and in the future; (4)
the parental abilities of the individuals seeking custody; (5) the programs
available to assist these individuals to promote the best interest of the
child; (6) the plans for the child by these individuals or by the agency
seeking custody; (7) the stability of the home or proposed placement; (8) the
acts or omissions of the parent that may indicate that the existing
parent-child relationship is not a proper one; and (9) any excuse for the acts
or omissions of the parent.  Id.  These factors are not exhaustive, and there is
no requirement that the Department prove all factors as a condition precedent
to parental termination.  In re C.H., 89 S.W.3d at 27; Walker v. Tex. Dep’t of Family & Protective Servs., 312 S.W.3d 608,
618–19 (Tex. App.—Houston [1st Dist.] 2009, pet. denied).

The desires
of the child.  At trial, J.D.S.
was two years old and did not express her desires.  However, J.D.S. had not seen her father at
least since his incarceration in July 2008. 
Thus, a reasonable fact finder could conclude that she had no conscious
memory of S.S.  

          The child’s physical and emotional needs,
now and in the future, and the emotional and physical danger to the child, now
and in the future.  S.S. has been
incarcerated for the majority of J.D.S.’s life. 
As we have already concluded, his minimal and sporadic correspondence
did not amount to significant contact with his daughter.  Because S.S. was serving eight concurrent
ten-year sentences, the date of his release from prison was uncertain.  The evidence at trial was that he would first
be eligible for parole in 2015, but he could also serve his entire sentence and
not be released until 2018.  Ward, the
child advocate, testified that this kind of uncertainty would be detrimental to
J.D.S.

          The parental ability of the individual
seeking custody and programs available to assist in promoting the child’s best
interest.  S.S. argues
that he took parenting classes while in prison, but the evidence at trial was
that he did not verify whether he had completed such classes.  There was no other evidence about S.S.’s
parenting ability.

          Plans for the child by S.S.  As we have discussed, S.S.
suggested his mother as a potential guardian for J.D.S. until his release from
prison, but the home study on S.S.’s mother was denied, indicating that this
would not be a suitable placement for J.D.S.

          Stability of the home or proposed
placement.  The evidence at trial showed that
J.D.S. was bonded to her brother and foster parents, who wished to adopt both
J.D.S. and her brother.  Both Dix and
Ward testified that this would be in J.D.S.’s best interest.

          The acts or omissions of the parent
and any excuse for such acts or omissions. 
S.S. had been incarcerated in Missouri since before J.D.S. came into the
Department’s custody.  “When parents are
incarcerated, they are absent from the child’s daily life and are unable to
provide support, and when parents like appellant repeatedly commit criminal
acts that subject them to the possibility of incarceration, that can negatively
impact a child’s living environment and emotional well-being.”  In re
S.M.L., 171 S.W.3d 472, 479 (Tex. App.—Houston [14th Dist.] 2005, no pet.).
 While S.S. may not have been able to
visit J.D.S. because of his incarceration, no excuse for his criminal acts and
incarceration appears in the record.

Viewing the evidence in both the
light most favorable to the finding and in its entirety, we conclude that the
fact finder could reasonably have formed a firm belief or conviction that termination
of S.S.’s parental rights was in the best interest of J.D.S.  We overrule S.S.’s second issue.

* * *

          The
Department brought a cross-issue about the trial court’s denial of termination
based on section 161.001(Q), which provides that termination of parental rights
may be predicated on a finding that the parent “knowingly engaged in criminal
conduct that has resulted in the parent’s: (i) conviction of an offense; and
(ii) confinement or imprisonment and inability to care for the child for not
less than two years from the date of filing the petition.”  Tex.
Fam. Code Ann. § 161.001(Q). 
In light of our disposition of S.S.’s issues, we do not reach the
Department’s cross-issue.

Conclusion

We affirm the judgment of the trial
court.  

 

 

                                                                   Michael
Massengale

                                                                   Justice

 

Panel
consists of Justices Keyes, Higley, and Massengale.