**Opinion filed August 31, 2012**



In The

# Eleventh Court of Appeals

_____

## No. 11-12-00130-CV

_____

## IN THE INTEREST OF K.G. AND C.G., CHILDREN

**On Appeal from the 326th District Court**

**Taylor County, Texas**

**Trial Court Cause No. 6943-CX**

### MEMORANDUM OPINION

Davis appeals from the trial court's order terminating his parental rights to K.G. and C.G. On appeal, Davis challenges the legal and factual sufficiency of the evidence supporting the termination of his parental rights. We affirm.

*Background*

Candace and Davis are the parents of K.G. and C.G. K.G. was born in February 2009, and C.G. was born in March 2010.

On March 2, 2010, Davis was convicted of the second-degree felony offense of driving while intoxicated. He was sentenced to confinement for a term of fifteen years. The judgment of conviction showed that Davis also had a 2002 conviction for a felony offense of driving while intoxicated. Davis last saw K.G. in January 2010, and he has never seen C.G.

On March 4, 2010, the Texas Department of Family and Protective Services filed its original petition seeking to terminate the parental rights of Candace and Davis to K.G. and C.G. Candace voluntarily relinquished her rights to K.G. and C.G. Davis's mother, Wanda, filed a petition in intervention in which she requested the trial court to appoint her as sole managing conservator of K.G. and C.G. On the morning of trial, Wanda informed her counsel that she was ill with an "asthma attack." Wanda did not attend the trial.

Following a bench trial in this case, the trial court entered an order terminating Candace's and Davis's parental rights to K.G. and C.G. In the order, the trial court found by clear and convincing evidence that termination of Davis's parental rights was in the children's best interest and that Davis had "knowingly engaged in criminal conduct that ha[d] resulted in [his] conviction of an offense and confinement or imprisonment and inability to care for the children for not less than two years from the date of filing the petition." The trial court also denied Wanda all the relief she requested in her petition in intervention.

Davis has filed this appeal from the trial court's order terminating his parental rights. Candace and Wanda have not appealed from the trial court's order.

*Issues on Appeal*

Davis presents two issues for review. In his first issue, he challenges the legal and factual sufficiency of the evidence supporting the trial court's finding that termination of his parental rights was in the children's best interest. In his second issue, he challenges the legal and factual sufficiency of the evidence supporting the finding that he knowingly engaged in criminal conduct that resulted in his conviction of an offense and confinement or imprisonment and inability to care for the children for not less than two years from the date the petition was filed.

*Standards of Review*

Due process requires that the grounds for termination be established by clear and convincing evidence. *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002). This requires a measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. TEX. FAM. CODE ANN. § 101.007 (West 2008); *In re D.O.*, 338 S.W.3d 29, 33 (Tex. App.—Eastland 2011, no pet.). When conducting a legal sufficiency review, we review all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. *City of Keller v. Wilson*, 168 S.W.3d 802, 817 (Tex. 2005); *In re J.F.C.*, 96

S.W.3d at 266; *In re J.P.H.*, 196 S.W.3d 289, 292 (Tex. App.—Eastland 2006, no pet.).  We must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could have done so, and we disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible.  *In re J.F.C.*, 96 S.W.3d at 266.

When conducting a factual sufficiency review, we review the record as a whole, including evidence in support of and contrary to the judgment, and give due consideration to evidence that the trier of fact could have found to be clear and convincing.  *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002); *In re J.P.H.*, 196 S.W.3d at 292–93.  We then determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations.  *In re C.H.*, 89 S.W.3d at 25; *In re J.P.H.*, 196 S.W.3d at 293.  We also consider whether any disputed evidence is such that a reasonable factfinder could not have resolved that evidence in favor of its finding.  *In re J.F.C.*, 96 S.W.3d at 266; *In re J.P.H.*, 196 S.W.3d at 293.

To terminate parental rights, it must be shown by clear and convincing evidence that the parent has committed one of the acts or omissions listed in Section 161.001(1)(A)–(T) and that termination is in the best interest of the child.  TEX. FAM. CODE ANN. § 161.001 (West Supp. 2012); *In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005); *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003).  In this case, the trial court found by clear and convincing evidence that Davis violated Section 161.001(1)(Q) and that termination was in the children's best interest.

*Section 161.001(1)(Q)*

Section 161.001(1)(Q) allows termination of parental rights when a parent has knowingly engaged in criminal conduct that has resulted in the parent's (i) conviction of an offense and (ii) confinement or imprisonment and inability to care for the child for not less than two years from the date of filing the petition.  Terminating parental rights under subsection Q requires that the parent be both incarcerated or confined and unable to care for the child for at least two years from the date the termination petition is filed.  *In re H.R.M.*, 209 S.W.3d 105, 110 (Tex. 2006). "[I]f the parent is convicted and sentenced to serve at least two years and will be unable to provide for his or her child during that time, the [Department] may use subsection Q to ensure that the child will not be neglected."  *In re A.V.*, 113 S.W.3d at 360.

A two-year sentence does not automatically meet subsection Q's two-year imprisonment requirement.  *In re H.R.M.*, 209 S.W.3d at 108.  In some cases, neither the length of the sentence

nor the projected release date is dispositive of when the parent will in fact be released from prison. *Id.* Thus, evidence of the availability of parole is relevant to determine whether the parent will be released within two years. *Id.* at 109. Mere introduction of parole-related evidence, however, does not prevent a factfinder from forming a firm conviction or belief that the parent will remain incarcerated for at least two years. *Id.* Parole decisions are inherently speculative, and the decision rests entirely within the parole board's discretion. *Id.*; *In re R.A.L.*, 291 S.W.3d 438, 443 (Tex. App.—Texarkana 2009, no pet.); *In re K.R.M.*, 147 S.W.3d 628, 630 (Tex. App.—San Antonio 2004, no pet.). If the mere possibility of parole prevents the factfinder from ever forming a firm belief or conviction that a parent will remain incarcerated for at least two years, then termination under subsection Q will occur only when the parent has no possibility of parole. *In re H.R.M.*, 209 S.W.3d at 109. This result would impermissibly elevate the Department's burden of proof from clear and convincing to beyond a reasonable doubt. *Id.*

Once the Department has established that a parent's knowing criminal conduct resulted in his or her incarceration for more than two years, the burden shifts to the parent to produce some evidence as to how he or she will arrange to provide care for the child during that period. *Hampton v. Tex. Dep't of Protective & Regulatory Servs.*, 138 S.W.3d 564, 567 (Tex. App.— El Paso 2004, no pet.); *In re Caballero*, 53 S.W.3d 391, 396 (Tex. App.—Amarillo 2001, pet. denied). When that burden of production is met, the Department then has the burden of persuasion that the arrangement would not satisfy the parent's duty to the child. *Hampton*, 138 S.W.3d at 567; *In re Caballero*, 53 S.W.3d at 396.

The record shows that, on March 2, 2010, Davis was convicted of a second-degree felony offense of driving while intoxicated. His fifteen-year sentence for the offense commenced the same day. Thus, Davis was incarcerated on March 4, 2010, the date that the Department filed its original petition in this case. On August 2, 2011, the Department amended its petition to include an allegation seeking to terminate Davis's parental rights under Section 161.001(1)(Q). The first issue we address is whether the two-year period in subsection Q started when the Department filed its original petition, or alternatively, when the Department added the subsection Q allegation in its amended petition. The purpose of subsection Q is to protect children from being neglected. *In re A.V.,* 113 S.W.3d at 360. Given this purpose, "it is logical to conclude that when subsection (Q) refers to 'the petition,' it is referring to the original petition for termination, and not a subsequently amended one adding an allegation for termination under subsection (Q)."

*In re D.J.H.*, No. 04-11-00668-CV, 2012 WL 3104502, at *5 (Tex. App.—San Antonio, August 1, 2012, no pet. h.). We agree with this reasoning; therefore, we conclude that the two-year statutory period in subsection Q started on March 4, 2010. However, as explained below, even if the statutory period did not start until August 2, 2011, we would reach the same result.

Davis was serving his fifteen-year sentence at the time of the trial. He received sixty-one days' credit on the sentence in the judgment of conviction. Davis testified that he had been denied parole on the fifteen-year sentence on one occasion. Davis said that his next parole hearing was in September 2012 and that "[he] really expect[ed] to make this next parole." Davis also said that he had hired an attorney to help him in the parole process and that his attorney thought that he would make parole in September 2012. However, Davis also admitted that he had a "lengthy" and "extensive" criminal history with "[p]robably close to 15" prior convictions, including several felony convictions. Davis testified that his criminal activities revolved around his use of drugs and alcohol. He had at least four convictions for driving while intoxicated. Davis was forty-two years old at the time of trial, and he had been in and out of prison as an adult.

The Department filed its original petition on March 4, 2010. Therefore, to meet the requirements of subsection Q, the Department had to show that Davis would be confined at least through March 4, 2012. Because September 2012 was the earliest possible parole date, the Department met its burden to show confinement for two years. If the two-year statutory period in subsection Q did not start until August 2, 2011, which was the date that the Department filed its amended petition, the Department was required to show that Davis would be confined at least through August 2, 2013. Based on the evidence, including the length of Davis's sentence and his prior convictions, a reasonable trier of fact could have formed a firm belief or conviction that Davis's hope that he would be paroled in September 2012 was pure speculation. As the sole arbiter when assessing the credibility and demeanor of the witnesses, the trial court was free to disregard Davis's testimony regarding the possibility of parole, "which was barely more than conjecture," especially when the record showed multiple convictions. *In re H.R.M.*, 209 S.W.3d at 109. Therefore, the trial court could reasonably have formed a firm belief or conviction that Davis would be incarcerated at least through August 2, 2013.

Subsection Q looks at whether the incarcerated parent will be unable to care for the child for two years from the date the termination petition is filed. *Id.* at 110; *In re A.V.*, 113 S.W.3d at

360. The "care" contemplated by subsection Q encompasses arranging for care to be provided by the incarcerated person's family or someone else who has agreed to assume the incarcerated parent's obligation to care for the child. *In re H.R.M.*, 209 S.W.3d at 110; *In re Caballero*, 53 S.W.3d at 396.

The record shows that the Department placed K.G. and C.G. in foster care after they were removed from Candace's care and that the children remained in foster care at the time of trial. Davis wanted K.G. and C.G. to be placed with his mother, Wanda. However, Davis acknowledged that Wanda could not take care of the children by herself because of her health problems. Wanda, who was sixty-three years old, had emphysema and osteoporosis. Davis testified that Wanda had "been on oxygen [for] years" and that her breathing problems related to her emphysema had become worse since he was imprisoned in 2010. Wanda did not attend the trial because she was experiencing breathing problems.

Davis believed that Wanda had the ability to take care of K.G. and C.G. with help from another family member. Davis thought that his sister, Bonnie, would help Wanda take care of the children. Bonnie had a criminal history and, during the pendency of this case, tested positive for methamphetamine in a hair follicle test. More importantly, neither Wanda nor Bonnie testified that they agreed to assume and could assume Davis's obligation to care for K.G. and C.G. while he was incarcerated. Thus, there was a lack of evidence showing that Davis had made a suitable arrangement to provide care for K.G. and C.G. during his incarceration. Based on the evidence before it, the trial court could reasonably have formed a firm belief or conviction that Davis would be unable to care for K.G. and C.G. during his incarceration.

The evidence is legally and factually sufficient to support termination under Section 161.001(1)(Q) of the Texas Family Code. Davis's second issue is overruled.

*Best Interest of the Children*

In his first issue, Davis challenges the sufficiency of the evidence to support the trial court's finding that termination of his parental rights was in the best interest of K.G. and C.G. The focus is on the children's best interest, not that of the parents. *Dupree v. Texas Dep't of Protective & Regulatory Servs.*, 907 S.W.2d 81, 86 (Tex. App.—Dallas 1995, no writ). With respect to the best interest of a child, no unique set of factors need be proved. *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied). But, courts may use the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72

(Tex. 1976). These include, but are not limited to, (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home of proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *Id.* Additionally, evidence that proves one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *In re C.J.O.*, 325 S.W.3d at 266. A trier of fact may measure a parent's future conduct by his or her past conduct and determine that it is in the child's best interest to terminate parental rights. *In re D.S.*, 333 S.W.3d 379, 384 (Tex. App.—Amarillo 2011, no pet.).

Davis had not seen K.G. since she was about eleven months old, and he had never seen C.G. Thus, the children did not have a bond with Davis. Davis acknowledged in his testimony that he did not have a relationship with the children. Davis has a lengthy criminal history, has been in and out of prison, and was in prison at the time of trial. Davis had not exhibited adequate parenting abilities in the past. The evidence demonstrated that he could not provide K.G. and C.G. a safe and stable home environment or meet their physical and emotional needs. Further, the evidence showed that Davis likely would not be able to sustain a safe and stable environment or to meet the children's needs in the future.

K.G. and C.G. had been in foster care with a family in Comanche since their removal from Candace's care. The foster parents had provided a stable home environment for K.G. and C.G. and had met the children's needs. A Department caseworker testified that the Department had found foster parents in Snyder who wanted to adopt K.G. and C.G. The caseworker said that the foster parents in Snyder had visited K.G. and C.G. and maintained phone contact with them.

Based on the evidence, the trial court could have reasonably formed a firm belief or conviction that termination of Davis's parental rights was in the children's best interest. The evidence is legally and factually sufficient to support the best interest finding. Davis's first issue is overruled.

*This Court's Ruling*

We affirm the trial court's order terminating Davis's parental rights to K.G. and C.G.


TERRY McCALL

JUSTICE


August 31, 2012

Panel consists of: Wright, C.J.,
McCall, J., and Kalenak, J.