Opinion filed August 31,
2012

   

 

 

                                                                       In The

                                                                              

  Eleventh
Court of Appeals

                                                                   __________

 

                                                         No. 11-12-00130-CV 

                                                    __________

 

                 IN THE
INTEREST OF K.G. AND C.G., CHILDREN

 

 

                                   On
Appeal from the 326th District Court

 

                                                            Taylor
County, Texas

 

                                                   Trial
Court Cause No. 6943-CX 

 



 

                                            M
E M O R A N D U M   O P I N I O N

            Davis
appeals from the trial court’s order terminating his parental rights to K.G.
and C.G.

On appeal, Davis
challenges the legal and factual sufficiency of the evidence supporting the
termination of his parental rights.  We affirm.

Background

            Candace
and Davis are the parents of K.G. and C.G.  K.G. was born in February 2009, and
C.G. was born in March 2010.  

            On
March 2, 2010, Davis was convicted of the second-degree felony offense of
driving while intoxicated.  He was sentenced to confinement for a term of
fifteen years.  The judgment of conviction showed that Davis also had a 2002 conviction
for a felony offense of driving while intoxicated.  Davis last saw K.G. in
January 2010, and he has never seen C.G.

            On
March 4, 2010, the Texas Department of Family and Protective Services filed its
original petition seeking to terminate the parental rights of Candace and Davis
to K.G. and C.G.  Candace voluntarily relinquished her rights to K.G. and C.G. 
Davis’s mother, Wanda, filed a petition in intervention in which she requested
the trial court to appoint her as sole managing conservator of K.G. and C.G. 
On the morning of trial, Wanda informed her counsel that she was ill with an
“asthma attack.”  Wanda did not attend the trial.

            Following
a bench trial in this case, the trial court entered an order terminating Candace’s
and Davis’s parental rights to K.G. and C.G.  In the order, the trial court
found by clear and convincing evidence that termination of Davis’s parental
rights was in the children’s best interest and that Davis had “knowingly
engaged in criminal conduct that ha[d] resulted in [his] conviction of an
offense and confinement or imprisonment and inability to care for the children
for not less than two years from the date of filing the petition.”  The trial
court also denied Wanda all the relief she requested in her petition in
intervention.  

            Davis
has filed this appeal from the trial court’s order terminating his parental
rights.  Candace and Wanda have not appealed from the trial court’s order.

Issues
on Appeal

            Davis
presents two issues for review.  In his first issue, he challenges the legal
and factual sufficiency of the evidence supporting the trial court’s finding
that termination of his parental rights was in the children’s best interest.  In
his second issue, he challenges the legal and factual sufficiency of the
evidence supporting the finding that he knowingly engaged in criminal conduct
that resulted in his conviction of an offense and confinement or imprisonment
and inability to care for the children for not less than two years from the
date the petition was filed.

Standards
of Review

            Due
process requires that the grounds for termination be established by clear and
convincing evidence.  In re J.F.C., 96 S.W.3d 256, 263 (Tex. 2002). 
This requires a measure or degree of proof that will produce in the mind of the
trier of fact a firm belief or conviction as to the truth of the allegations
sought to be established.  Tex. Fam. Code
Ann. § 101.007 (West 2008); In re D.O., 338 S.W.3d 29, 33 (Tex.
App.—Eastland 2011, no pet.).  When conducting a legal sufficiency review, we
review all the evidence in the light most favorable to the finding to determine
whether a reasonable trier of fact could have formed a firm belief or
conviction that its finding was true.  City of Keller v. Wilson, 168
S.W.3d 802, 817 (Tex. 2005); In re J.F.C., 96 S.W.3d at 266; In re
J.P.H., 196 S.W.3d 289, 292 (Tex. App.—Eastland 2006, no pet.).  We must
assume that the factfinder resolved disputed facts in favor of its finding if a
reasonable factfinder could have done so, and we disregard all evidence that a
reasonable factfinder could have disbelieved or found to have been incredible. 
In re J.F.C., 96 S.W.3d at 266.

            When
conducting a factual sufficiency review, we review the record as a whole,
including evidence in support of and contrary to the judgment, and give due
consideration to evidence that the trier of fact could have found to be clear
and convincing.  In re C.H., 89 S.W.3d 17, 25 (Tex. 2002); In re
J.P.H., 196 S.W.3d at 292–93.  We then determine whether the evidence is
such that a factfinder could reasonably form a firm belief or conviction about
the truth of the State’s allegations.  In re C.H., 89 S.W.3d at 25; In
re J.P.H., 196 S.W.3d at 293.  We also consider whether any disputed
evidence is such that a reasonable factfinder could not have resolved that
evidence in favor of its finding.  In re J.F.C., 96 S.W.3d at 266; In
re J.P.H., 196 S.W.3d at 293.

            To
terminate parental rights, it must be shown by clear and convincing evidence
that the parent has committed one of the acts or omissions listed in Section
161.001(1)(A)–(T) and that termination is in the best interest of the child.  Tex. Fam. Code Ann. § 161.001 (West
Supp. 2012); In re J.L., 163 S.W.3d 79, 84 (Tex. 2005); In re A.V.,
113 S.W.3d 355, 362 (Tex. 2003).  In this case, the trial court found by clear
and convincing evidence that Davis violated Section 161.001(1)(Q) and that
termination was in the children’s best interest.

Section
161.001(1)(Q)

            Section
161.001(1)(Q) allows termination of parental rights when a parent has knowingly
engaged in criminal conduct that has resulted in the parent’s (i) conviction of
an offense and (ii) confinement or imprisonment and inability to care for
the child for not less than two years from the date of filing the petition. 
Terminating parental rights under subsection Q requires that the parent be both
incarcerated or confined and unable to care for the child for at least two
years from the date the termination petition is filed.  In re H.R.M.,
209 S.W.3d 105, 110 (Tex. 2006).  “[I]f the parent is convicted and sentenced
to serve at least two years and will be unable to provide for his or her child
during that time, the [Department] may use subsection Q to ensure that the
child will not be neglected.”  In re A.V., 113 S.W.3d at 360.   

            A
two-year sentence does not automatically meet subsection Q’s two-year
imprisonment requirement.  In re H.R.M., 209 S.W.3d at 108.  In some
cases, neither the length of the sentence nor the projected release date is
dispositive of when the parent will in fact be released from prison.  Id. 
Thus, evidence of the availability of parole is relevant to determine whether
the parent will be released within two years.  Id. at 109.  Mere introduction
of parole-related evidence, however, does not prevent a factfinder from forming
a firm conviction or belief that the parent will remain incarcerated for at
least two years.  Id.  Parole decisions are inherently speculative, and
the decision rests entirely within the parole board’s discretion.  Id.; In
re R.A.L., 291 S.W.3d 438, 443 (Tex. App.—Texarkana 2009, no pet.); In
re K.R.M., 147 S.W.3d 628, 630 (Tex. App.—San Antonio 2004, no pet.).  If
the mere possibility of parole prevents the factfinder from ever forming a firm
belief or conviction that a parent will remain incarcerated for at least two
years, then termination under subsection Q will occur only when the parent has
no possibility of parole.  In re H.R.M., 209 S.W.3d at 109.  This result
would impermissibly elevate the Department’s burden of proof from clear and
convincing to beyond a reasonable doubt.  Id.

            Once
the Department has established that a parent’s knowing criminal conduct
resulted in his or her incarceration for more than two years, the burden shifts
to the parent to produce some evidence as to how he or she will arrange to
provide care for the child during that period.  Hampton v. Tex. Dep’t of
Protective & Regulatory Servs., 138 S.W.3d 564, 567 (Tex. App.—El Paso
2004, no pet.); In re Caballero, 53 S.W.3d 391, 396 (Tex. App.—Amarillo
2001, pet. denied).  When that burden of production is met, the Department then
has the burden of persuasion that the arrangement would not satisfy the
parent’s duty to the child.  Hampton, 138 S.W.3d at 567; In re
Caballero, 53 S.W.3d at 396.

            The
record shows that, on March 2, 2010, Davis was convicted of a second-degree
felony offense of driving while intoxicated.  His fifteen-year sentence for the
offense commenced the same day.  Thus, Davis was incarcerated on March 4, 2010,
the date that the Department filed its original petition in this case.  On
August 2, 2011, the Department amended its petition to include an allegation seeking
to terminate Davis’s parental rights under Section 161.001(1)(Q).  The first
issue we address is whether the two-year period in subsection Q started when
the Department filed its original petition, or alternatively, when the
Department added the subsection Q allegation in its amended petition.  The
purpose of subsection Q is to protect children from being neglected.  In re
A.V., 113 S.W.3d at 360.  Given this purpose, “it is logical to conclude
that when subsection (Q) refers to ‘the petition,’ it is referring to the
original petition for termination, and not a subsequently amended one adding an
allegation for termination under subsection (Q).”  In re D.J.H., No.
04-11-00668-CV, 2012 WL 3104502, at *5 (Tex. App.—San Antonio, August 1,
2012, no pet. h.).  We agree with this reasoning; therefore, we conclude that
the two-year statutory period in subsection Q started on March 4, 2010. 
However, as explained below, even if the statutory period did not start until August
2, 2011, we would reach the same result.                  

            Davis
was serving his fifteen-year sentence at the time of the trial.  He received
sixty-one days’ credit on the sentence in the judgment of conviction.  Davis
testified that he had been denied parole on the fifteen-year sentence on one
occasion.  Davis said that his next parole hearing was in September 2012 and
that “[he] really expect[ed] to make this next parole.”  Davis also said that
he had hired an attorney to help him in the parole process and that his
attorney thought that he would make parole in September 2012.  However, Davis
also admitted that he had a “lengthy” and “extensive” criminal history with
“[p]robably close to 15” prior convictions, including several felony
convictions.  Davis testified that his criminal activities revolved around his
use of drugs and alcohol.  He had at least four convictions for driving while
intoxicated.  Davis was forty-two years old at the time of trial, and he had
been in and out of prison as an adult.

            The
Department filed its original petition on March 4, 2010.  Therefore, to meet
the requirements of subsection Q, the Department had to show that Davis would
be confined at least through March 4, 2012.  Because September 2012 was the
earliest possible parole date, the Department met its burden to show
confinement for two years.  If the two-year statutory period in subsection Q
did not start until August 2, 2011, which was the date that the Department
filed its amended petition, the Department was required to show that Davis would
be confined at least through August 2, 2013.  Based on the evidence, including
the length of Davis’s sentence and his prior convictions, a reasonable trier of
fact could have formed a firm belief or conviction that Davis’s hope that he
would be paroled in September 2012 was pure speculation.  As the sole arbiter
when assessing the credibility and demeanor of the witnesses, the trial court
was free to disregard Davis’s testimony regarding the possibility of parole,
“which was barely more than conjecture,” especially when the record showed
multiple convictions.  In re H.R.M., 209 S.W.3d at 109.  Therefore, the
trial court could reasonably have formed a firm belief or conviction that Davis
would be incarcerated at least through August 2, 2013.

            Subsection
Q looks at whether the incarcerated parent will be unable to care for the child
for two years from the date the termination petition is filed.  Id. at
110; In re A.V., 113 S.W.3d at 360.  The “care” contemplated by
subsection Q encompasses arranging for care to be provided by the incarcerated
person’s family or someone else who has agreed to assume the incarcerated
parent’s obligation to care for the child.  In re H.R.M., 209 S.W.3d at
110; In re Caballero, 53 S.W.3d at 396.             

            The
record shows that the Department placed K.G. and C.G. in foster care after they
were removed from Candace’s care and that the children remained in foster care at
the time of trial.  Davis wanted K.G. and C.G. to be placed with his mother,
Wanda. However, Davis acknowledged that Wanda could not take care of the
children by herself because of her health problems.  Wanda, who was sixty-three
years old, had emphysema and osteoporosis.  Davis testified that Wanda had “been
on oxygen [for] years” and that her breathing problems related to her emphysema
had become worse since he was imprisoned in 2010.  Wanda did not attend the
trial because she was experiencing breathing problems.

            Davis
believed that Wanda had the ability to take care of K.G. and C.G. with help from
another family member.  Davis thought that his sister, Bonnie, would help Wanda
take care of the children.  Bonnie had a criminal history and, during the
pendency of this case, tested positive for methamphetamine in a hair follicle
test.  More importantly, neither Wanda nor Bonnie testified that they agreed to
assume and could assume Davis’s obligation to care for K.G. and C.G. while he
was incarcerated.  Thus, there was a lack of evidence showing that Davis had made
a suitable arrangement to provide care for K.G. and C.G. during his
incarceration.  Based on the evidence before it, the trial court could
reasonably have formed a firm belief or conviction that Davis would be unable
to care for K.G. and C.G. during his incarceration.  

            The
evidence is legally and factually sufficient to support termination under
Section 161.001(1)(Q) of the Texas Family Code.  Davis’s second issue is
overruled.

Best
Interest of the Children

            In
his first issue, Davis challenges the sufficiency of the evidence to support
the trial court’s finding that termination of his parental rights was in the
best interest of K.G. and C.G. The focus is on the children’s best interest,
not that of the parents.  Dupree v. Texas Dep’t of Protective &
Regulatory Servs., 907 S.W.2d 81, 86 (Tex. App.—Dallas 1995, no writ). 
With respect to the best interest of a child, no unique set of factors need be
proved.  In re C.J.O., 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010,
pet. denied).  But, courts may use the non-exhaustive Holley factors to
shape their analysis.  Holley v. Adams, 544 S.W.2d 367, 371–72 (Tex.
1976).  These include, but are not limited to, (1) the desires of the child,
(2) the emotional and physical needs of the child now and in the future, (3)
the emotional and physical danger to the child now and in the future, (4) the
parental abilities of the individuals seeking custody, (5) the programs
available to assist these individuals to promote the best interest of the
child, (6) the plans for the child by these individuals or by the agency
seeking custody, (7) the stability of the home of proposed placement, (8) the
acts or omissions of the parent that may indicate that the existing
parent-child relationship is not a proper one, and (9) any excuse for the acts
or omissions of the parent.  Id.  Additionally, evidence that proves one
or more statutory grounds for termination may also constitute evidence
illustrating that termination is in the child’s best interest.  In re C.J.O.,
325 S.W.3d at 266.  A trier of fact may measure a parent’s future conduct by
his or her past conduct and determine that it is in the child’s best interest
to terminate parental rights.  In re D.S., 333 S.W.3d 379, 384 (Tex.
App.—Amarillo 2011, no pet.).

            Davis
had not seen K.G. since she was about eleven months old, and he had never seen
C.G.  Thus, the children did not have a bond with Davis.  Davis acknowledged in
his testimony that he did not have a relationship with the children.  Davis has
a lengthy criminal history, has been in and out of prison, and was in prison at
the time of trial.  Davis had not exhibited adequate parenting abilities in the
past.  The evidence demonstrated that he could not provide K.G. and C.G. a safe
and stable home environment or meet their physical and emotional needs. 
Further, the evidence showed that Davis likely would not be able to sustain a
safe and stable environment or to meet the children’s needs in the future.  

            K.G.
and C.G. had been in foster care with a family in Comanche since their removal
from Candace’s care.  The foster parents had provided a stable home environment
for K.G. and C.G. and had met the children’s needs.  A Department caseworker
testified that the Department had found foster parents in Snyder who wanted to
adopt K.G. and C.G.  The caseworker said that the foster parents in Snyder had visited
K.G. and C.G. and maintained phone contact with them.

            Based
on the evidence, the trial court could have reasonably formed a firm belief or conviction
that termination of Davis’s parental rights was in the children’s best
interest.  The evidence is legally and factually sufficient to support the best
interest finding.  Davis’s first issue is overruled.




 

This
Court’s Ruling

            We affirm the trial
court’s order terminating Davis’s parental rights to K.G. and C.G.

 

 

                                                                                                TERRY
McCALL

                                                                                                JUSTICE
       

 

August 31, 2012

Panel consists of: Wright, C.J.,

McCall, J., and Kalenak, J.